177 So.2d 16 (1965)
SMYRNA DEVELOPERS, INC., a Florida corporation, Appellant,
v.
Jerome J. BORNSTEIN and Robert J. Bishop, Appellees.
No. 4915.
District Court of Appeal of Florida. Second District.
June 30, 1965.
*17 William H. Maness, of Kurz, Toole, Maness & Martin, Jacksonville, for appellant.
M.W. Wells of Maguire, Voorhis & Wells, Orlando, for appellee Bishop.
Charles M. McCarty, Orlando, for appellee Bornstein.
SMITH, Chief Judge.
Plaintiff appeals a final judgment in favor of the defendants entered after the court dismissed plaintiff's third amended complaint. The defendants cross assign as error the denial of their motion for summary judgment.
The third amended complaint alleges that the plaintiff engaged the services of the defendants, who were partners engaged in the practice of law; that it disclosed to the defendants the exact nature and extent of its assets, obligations, plans for development of a shopping center, method of financing, prospective lessees and every facet of its proposed endeavors; that in disregard, neglect and violation of the duty owed as attorneys for the plaintiff, their client, the defendants conspired with each other and with others to deprive the plaintiff of its property and to obtain it for themselves and others. Plaintiff then alleges specific overt acts to the effect that the defendants became officers and directors of the plaintiff corporation and negotiated a loan to the corporation from one of them as trustee for undisclosed principals; that the undisclosed principals were in fact persons related to or under the control and domination of the defendants; that the defendants accepted employment by these undisclosed principals without disclosing that employment to the plaintiff; that the loan was secured by a note and mortgage encumbering the property of the plaintiff made payable within one year when the defendants knew by virtue of their capacity as attorneys, officers and directors of the plaintiff that the financing and construction of the shopping center could not be accomplished in time to pay that mortgage; that the defendants assured the president and sole stockholder of the plaintiff corporation that they could and would procure an extension of time in order that the corporate purpose could be fulfilled when in fact the defendants did not intend to do so, but to the contrary, planned to deprive the plaintiff of its property and in fact later counseled and encouraged the undisclosed principals not to grant an extension; that when the mortgage became due the defendants, while continuing as attorneys, officers and directors of the plaintiff, instituted a suit against the plaintiff to foreclose the mortgage; that at the time of the institution of the mortgage foreclosure the defendants had in their possession all the corporate records, funds and other material pertaining to the affairs of the corporation and after demand refused to deliver them to the president and sole stockholder; that after the foreclosure the defendants for their own purposes and for the use and benefit of their undisclosed principals acquired the property of the plaintiff and appropriated the plaintiff's entire plan, including *18 the architectural plans prepared for and owned by the plaintiff, the various contracts with lessees and the surveys and drawings which they used in the construction of a shopping center. For all of these alleged wrongs the plaintiff claimed damages in the amount of $1,500,000.
We find that the complaint states a cause of action. See Halstead v. Florence Citrus Growers Ass'n, 1932, 104 Fla. 21, 139 So. 132, and Dreka v. Whitehair, 1940, 145 Fla. 102, 199 So. 579. There is no relationship between individuals which involves a greater degree of trust and confidence than that of attorney and client. The attorney is under a duty at all times to represent his client and handle his client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity. Business transactions between attorney and client are subject to the closest scrutiny. The burden is placed upon an attorney to establish by clear and convincing evidence the fairness of an agreement or transaction purporting to convey a property right from a client to his attorney. Gerlach v. Donnelly, Fla. 1957, 98 So.2d 493. If an attorney fails in the performance of these duties he may become personally liable to the client for the loss ensuing from his action whether the failure consists of fraud or negligent performance or failure to perform these duties. 5 Am.Jur.2d Attorneys at Law, §§ 167-168. Although the complaint alleges in detail the extent of participation of each of the defendants in the various transactions alleged, we have not endeavored to state this detail in our summary of the complaint. The defendants are partners engaged in the practice of law. As such each is responsible for the fraud or negligence of the other when acting within the scope of the ordinary business of an attorney. 5 Am.Jur.2d Attorneys at Law, § 181.
We cannot accept the defendants' contention that the complaint constitutes nothing more than a belated endeavor to appeal the foreclosure decree entered in Volusia County and discloses that the plaintiff lost its property by reason of those foreclosure proceedings rather than the alleged acts of the defendants. The fact that the defendants' alleged breach of duty resulted in a judicial decree of foreclosure in no way relieves the defendants from liability for their alleged breach of duty which produced that result. In addition the plaintiff alleges that it became aware of the facts alleged after it observed the construction of a shopping center according to plaintiff's plans.
Having determined that the complaint states a cause of action we consider defendants' cross assignments of error contending that the court erred in denying their motion for summary judgment. With the motion for summary judgment the court had before it the complaint, affidavits and depositions of the defendants and affidavits and depositions of three other parties who participated in and had knowledge of parts of the transactions. It is apparent that the defendants carried their initial burden of demonstrating that there was no genuine issue as to any material fact. In apparent recognition of this, the plaintiff submitted the affidavit of its president and sole stockholder in opposition to the motion. It is necessary therefore for us to review the material facts disclosed by the record to determine whether or not there is an absence of any genuine issue as to the material facts and, if so, whether under applicable principles of law such facts entitle the defendants to judgment.
In so reviewing the facts we are guided by these principles of law. Where fraud is alleged, the facts are mostly possessed by the defendants and doubt exists as to the facts, summary judgment should not be entered in favor of a defendant. Dean v. Gold Coast Theatres, Inc., Fla.App. 1963, 156 So.2d 546. All doubts regarding the existence of an issue are resolved against the movant and the evidence plus favorable inferences reasonably justified thereby are liberally construed in favor *19 of the opponent to summary judgment. A motion for summary judgment will be denied if the evidence demonstrates the existence of an issue of material fact. It is not sufficient for the opposing party merely to state that such an issue does exist but to the contrary the opposing party must, after the movant has carried his burden, come forward with a statement of facts such as would be admissible in evidence demonstrating the existence of an issue of material fact. Harvey Building, Inc. v. Haley, Fla. 1965, 175 So.2d 780, Opinion filed June 2, 1965. While business transactions between lawyers and clients are not prohibited, nevertheless they will be meticulously scrutinized when alleged to have been unfair. State ex rel. The Florida Bar v. Rhubottom, Fla. 1961, 132 So.2d 395.
Mr. Pointer was the principal stockholder of the plaintiff corporation. He engaged the services of Mr. Bornstein to represent him in the acquisition of the remainder of the stock. In a meeting between these two and the other stockholders Bornstein, posing as the agent for an undisclosed principal, negotiated a contract signed by Pointer and the other stockholders for Bornstein as agent to acquire all of the stock. Pursuant to this agreement the corporation subsequently acquired the stock of all the stockholders except that of Pointer leaving him the sole stockholder. Bornstein then became attorney, officer and director of the corporation. The funds to make the stock purchases were provided to the corporation by Leonard Simons, Albert Morrell and Anna Bornstein, all relatives of Mr. Bornstein, and initially by a corporation that subsequently transferred its interest to Bornstein and his father. The mortgage was made to Mr. Bishop as trustee and unrecorded assignments of mortgage were delivered by Bishop to the real parties in interest. The names of the actual lendors were not disclosed to Pointer. Interest at 15% was added on to the principal. Pointer says that Bornstein advised him that he (Bornstein) controlled the lendors and that the due date would be extended. Bornstein says that he does not know whether the names of the principals were disclosed to Pointer at the time of closing but says he advised Pointer that he would talk to the principals and that they would undoubtedly agree to an extension and subordination in order to complete construction. Bishop and Bornstein deposited the proceeds of the loan in their firm's trustee account and disbursed all of the funds in a manner satisfactory to the plaintiff. A Mr. Lowe, who was to arrange construction and permanent financing, was unable to do so on terms satisfactory to the parties. Bishop and Bornstein were frequently consulted on financing, leases and subordinations. When Lowe withdrew Bishop became an officer and director of the corporation and Lowe assigned his contract for the purchase of stock to Simons. Simons then loaned the corporation $8,500 to be used for advances to mortgage brokers. The corporation obtained a commitment for an $850,000 loan and a commitment for secondary financing in the amount of $150,000 with certain conditions including personal endorsements by Pointer and Lowe. To complete the plans and specifications the architect required a payment of $3,500 and Bornstein loaned this sum to the corporation. After Simons took Lowe's place Simons refused to endorse the loans. Bornstein obtained an agreement for partial release of the first mortgage. Other sources of financing were explored but refused for one reason or another and in the meantime the mortgage held by Bishop as trustee became due. Bornstein proposed that the corporation execute a quitclaim deed in satisfaction of the Bishop, Simons and Bornstein mortgages. Bornstein as attorney for Bishop filed suit to foreclose that mortgage. The total funds of the corporation at that time were $5,800 unexpended from the Simons loan. Bishop and Bornstein returned this sum to Simons. The corporation had no funds for the defense of the mortgage foreclosure. Bishop and Bornstein refused to deliver the corporate records to *20 Pointer. Counsel engaged by Pointer represented the corporation. Summary judgment of foreclosure was entered and the property was sold to Bishop, as trustee, who thereafter conveyed the property to Leonard Simons, Albert Morrell, Bornstein and the trustees under the will of Ruth Bornstein, deceased. The shopping center was completed with an anticipated annual revenue estimated at $127,000. Bishop and Bornstein state that they made a full and complete disclosure to Pointer of the fact that they represented and would protect the interest of the actual lendors even at the expense of the corporation. Pointer denies this and, to the contrary, says that Bornstein assured him he controlled the actual lendors and that the due date would be extended to permit completion of construction and financing. Pointer says that Bishop and Bornstein handled many of the affairs of the corporation; that they suggested all of the loans, handled all of the details and disbursed all of the funds; that he relied upon them completely; that because of their knowledge of appraisals that fixed the actual value of the property much in excess of the loans and with their knowledge that the financing and leasing arrangements made by the corporation would produce a large income for a long period of time, they handled all of the transactions so that they, their relatives and clients would become the owners of the property; that Bishop and Bornstein did not terminate their representation of the corporation nor their positions as officers and directors until after the institution of the mortgage foreclosure suit and then only upon his demand; that even then they refused to deliver the books and records of the corporation, demanding a fee when none was due and demanding that Pointer give them a release of all liability prior to delivery; that at the time of the foreclosure Bishop and Bornstein had an extension agreement signed by Simons and that the first demand for payment was via the complaint in the mortgage foreclosure; and that the permanent financing was delayed by objections to terms and conditions imposed from time to time by Bishop and Bornstein.
The foregoing summary discloses a substantial controversy concerning material issues of fact. Since matters of credibility are involved these issues can be resolved only by a trial on the merits. Our summary of the allegations and review of the facts should not be construed as an expression of any opinion or view as to the truth of such matters.
Reversed.
ALLEN and ANDREWS, JJ., concur.