452 So.2d 580 (1984)
K.M.A. ASSOCIATES, INC., Appellant,
v.
George N. MEROS, George S. Coit, Jr., John M. Edman, Peter N. Meros, Walter E. Smith, Dede Meros, Meros, Coit, Edman, Meros & Smith, P.A., Robert Papolos, Stephen Papolos, Albert Papolos and George N. Meros, Jr., Appellees.
No. 83-2046.
District Court of Appeal of Florida, Second District.
April 25, 1984.
Rehearing Denied June 27, 1984.
Charles J. Cheves of Cheves & Rapkin, Venice, for appellant.
John T. Allen, Jr., St. Petersburg, for appellees.
DANAHY, Judge.
The plaintiff in a suit for equitable relief and damages for legal malpractice appeals from a summary judgment in favor of the defendants. We reverse.
Plaintiff/appellant (K.M.A.) acquired the rights to a time-sharing project known as "Grand Shores West" on the gulf beaches. When financing became a problem and the project appeared to be lost, appellees/defendants, including attorney George N. Meros and his law partner, Walter E. Smith, entered into a limited partnership agreement with K.M.A. under which a group of investors put together by Meros acquired a fifty percent interest in the project. Meros was general partner and the limited partners included K.M.A. and the other appellees. Walter E. Smith, law partner of Meros, had represented K.M.A. in its attempts to put the project together, and represented the limited partnership throughout the events which led to this lawsuit.
Meros loaned considerable sums of money to the partnership and took back for himself twenty percent of K.M.A.'s limited partnership share, thus reducing K.M.A.'s interest to thirty percent. Eventually the entire project fell through and Meros threatened to foreclose mortgages securing the notes representing his loans to the venture. The parties then entered into a withdrawal agreement under which K.M.A. was *581 to receive receivables with a $250,000 face value in full payment for its thirty percent interest. Meros later claimed that K.M.A. had breached the partnership agreement and the withdrawal agreement and there were setoffs which would eliminate K.M.A.'s $250,000 entitlement. The withdrawal agreement contained a release under which Meros as general partner released every limited partner from any obligations arising out of the partnership agreement. Each limited partner then released the general partner and all other limited partners from any obligations under the partnership agreement or otherwise (emphasis added). The upshot of the whole matter, according to K.M.A., is that Meros now owns, possesses or controls all assets of the Grand Shores West venture while K.M.A.'s only memento is a $60,000 bill for legal services from the Meros law firm.
In this action K.M.A.'s complaint is in two counts. The first count seeks to impose a constructive trust on the Grand Shores West property against Meros. The second count is a legal malpractice claim against Meros, Smith and their law firm. K.M.A. demanded a jury trial on both counts. The appellees filed an answer and counterclaim. They asserted an affirmative defense based on the release and also an affirmative defense that K.M.A. was estopped because it had assigned its interest in the withdrawal agreement. That assignment had been mutually rescinded prior to this suit.
In due course the trial judge ordered that the two counts be severed, with the malpractice count set for jury trial and the equitable claim deferred for a later trial without a jury. K.M.A. contends that this was error.
The appellees filed a motion for summary judgment based upon the release and estoppel defenses. The trial judge granted the motion on both grounds. This appeal followed.
In our resolution of the issues raised in this appeal, we turn to an early decision of this court in Smyrna Developers, Inc. v. Bornstein, 177 So.2d 16 (Fla.2d DCA 1965). In that case this court made these pertinent observations:
There is no relationship between individuals which involves a greater degree of trust and confidence than that of attorney and client. The attorney is under a duty at all times to represent his client and handle his client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity. Business transactions between attorney and client are subject to the closest scrutiny. The burden is placed upon an attorney to establish by clear and convincing evidence the fairness of an agreement or transaction purporting to convey a property right from a client to his attorney. If an attorney fails in the performance of these duties he may become personally liable to the client for the loss ensuing from his action whether the failure consists of fraud or negligent performance or failure to perform these duties... .
... .
... All doubts regarding the existence of an issue are resolved against the movant and the evidence plus favorable inferences reasonably justified thereby are liberally construed in favor of the opponent to summary judgment... . While business transactions between lawyers and clients are not prohibited, nevertheless they will be meticulously scrutinized when alleged to have been unfair.
(Citation omitted.)
Id. at 18, 19. Accord The Florida Bar v. Simonds, 376 So.2d 853 (Fla. 1979); Jordon v. Growney, 416 So.2d 24 (Fla.4th DCA 1982); Abstract & Title Corp. of Florida v. Cochran, 414 So.2d 284 (Fla. 4th DCA 1982); Waldeck v. Marks, 328 So.2d 490 (Fla. 3d DCA 1976).
As we have noted, the trial judge granted summary judgment to the appellees based on the release contained in the withdrawal agreement and on the appellees' theory of quasi-estoppel based on the purported assignment by K.M.A. to a third party of K.M.A.'s interest under the withdrawal agreement  that is, K.M.A.'s entitlement to $250,000. We are of the view that the release is clearly part of the entire transaction which K.M.A. attacks in this *582 proceeding and it was error for the trial judge to grant summary judgment on the basis of that release. We are also of the view that the abortive assignment by K.M.A. of its interest under the withdrawal agreement is not sufficient to estop it from pursuing its causes of action for equitable relief and damages for malpractice. That is too weak a reed to support foreclosing K.M.A. from its day in court.
Having ruled that the trial judge erred in granting a summary judgment to the appellees, we address the question whether the trial judge erred in severing the malpractice count in K.M.A.'s complaint for a jury trial but deferring the equitable count for a later trial without a jury. We believe that the issues involved in the malpractice count are so related to the issues made by the equitable claim that a jury trial should be afforded on all issues. N.J. Willis Corp. v. Raskin, 430 So.2d 996 (Fla.4th DCA 1983); Napolitano v. H.L. Robertson & Associates, Inc., 311 So.2d 757 (Fla.3d DCA 1975); Westview Community Cemetery of Pompano Beach v. Lewis, 293 So.2d 373 (Fla.4th DCA 1974).
Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.
SCHEB, A.C.J., and CAMPBELL, J., concur.