Kenneth A. WELT, Trustee in Bankruptcy for Cascade International, Inc. and its subsidiaries, Plaintiff,

v.

John T. SIRMANS, Jr., Harvey Conners, George Duberson, Barney Schur, and Lawrence Moses, Defendants.

Kenneth A. WELT, Trustee in Bankruptcy for Cascade International, Inc. and its subsidiaries, Plaintiff,

v.

Aaron KARP, Howard Sommers and Karp & Sommers, Defendants.

Nos. 93–8628–CIV, 93–8629–CIV.

United States District Court, S.D. Florida.

Oct. 11, 1997.

Mara Beth Sommers, Carlson & Bales, P.A., Miami, FL, for Plaintiff.

John T. Sirmans, Jr., Kenilworth, NY, pro se,

Joseph H. Lowe, Winitz, Minkin & Lowe, Miami, FL, for Defendant.

George Duberson, Egg Harbor, NJ, pro se.

Harvey Conners, Newton, PA, pro se.

Barney Schur, Sacramento, CA, pro se.

## ORDER

NESBITT, District Judge.

This cause comes before the Court upon the Report and Recommendation of Magistrate Judge Barry L. Garber, entered May 7, 1997 (Case No. 93–8628 D.E. # 68; Case No. 93–8629 D.E. # 64), regarding objections filed by parties to the Honorable Robert A. Mark's Order Granting In Part and Denying In Part Defendants' Motion for Summary Judgment in Case Number 93–8629; and the joinder of Defendants' objections in Case Number 93–8628.[1]

Magistrate Judge Garber recommended that the Court affirm in part and reverse in part Judge Mark's Oral Ruling entered on June 14, 1996 and his written Order entered on August 26, 1996. On May 21, 1997 Plaintiff Kenneth A. Welt (hereinafter "Welt" or "Trustee") filed his objections to the Report and Recommendation (Case No. 93–8628 D.E. # 69; Case No. 93–8629 D.E. # 65). Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a *de novo* review of those portions of the Report and Recommendation to which the Trustee objected.

## BACKGROUND [2]

This case arose from the circumstances surrounding the existence of Cascade International, Inc. (hereinafter "Cascade"). Cascade was a holding company that owned various subsidiaries that sold women's clothing and operated cosmetic counters. Cascade had its principal place of business in Boca Raton, Florida, and was organized under Delaware law. Cascade's securities were publicly traded on the National Association of Securities Dealers Automated Quotation (hereinafter "NASDAQ") market; and as required by the Securities & Exchange Commission (hereinafter "SEC"), all necessary securities information were filed.

Victor Incendy (hereinafter "Incendy") dominated Cascade and occupied the position of president, chief operating officer, chairman of the board, and principal shareholder. Incendy initiated a plan whereby he and Bernard Levy, Cascade's auditor and issuing agent, prepared false financial statements and reports for Cascade. Incendy received capital contributions from the sale of unauthorized shares of Cascade's stock on the NASDAQ market. Incendy represented that these capital contributions were revenues from sales at the cosmetic counters owned by Cascade and its subsidiaries. However, the

---

1. Judge Mark chose to treat the Defendant Directors' joinder of K & S's arguments as a Renewed Motion for Summary Judgment.

2. These facts are largely undisputed by the parties and are drawn from Judge Mark's Oral Ruling as well as the parties' Stipulation of Facts not in Dispute.

cosmetics counters largely did not exist. The result of this fraud was to make Cascade appear more profitable than it was by inflating its earnings which, in turn, caused Cascade's stock to increase. Investors relied upon these false financial statements and reports and extended financial support to Cascade under the belief that it was a profitable and stable corporation.

In 1987, Cascade retained the law firm of Karp & Sommers (hereinafter "K & S") to represent Cascade in its securities matters. K & S requested information from Incendy and various other officers and directors in order to prepare forms required by the Securities and Exchange Commission (hereinafter "SEC"). The requested information included copies of all leases to which Cascade was a party. Incendy did not provide K & S all the lease agreements for the cosmetics counters or provide the location of the counters. K & S had already received other information about the counters and therefore, did not find that the leases were necessary to complete the SEC's forms.

The SEC began to investigate Cascade in or about August of 1991. At that point, Incendy's scheme began to unravel. On November 20, 1991 Cascade announced that its financial statements for the year ending on June 30, 1991 may not be accurate and that Incendy had disappeared. On December 16, 1991, Cascade filed for relief in bankruptcy. Shortly thereafter, Cascade's subsidiaries filed Chapter 11 petitions. Unfortunately for Cascade's creditors and investors, Cascade's liabilities far exceeded its assets.

On November 24, 1993, Welt, the Trustee in bankruptcy for Cascade and its subsidiaries, filed suit against Cascade's directors— Case Number 93–8628 (hereinafter the "*Welt v. Sirmans* action"). On the same date, Welt also filed a separate action against the law firm that represented Cascade in securities matters, K & S, and its individually named partners, Aaron Karp and Howard Sommers—Case Number 93–8629 (hereinafter the "K & S action").

### *Welt v. Sirmans* Procedural History

In the *Welt v. Sirmans* action, Welt alleges that Cascade's directors (John T. Sirmans, Harvey Conners, George Duberson, Barney M. Schur, and Lawrence Moses,[3] hereinafter "Defendant Directors" or "Defendants"), breached their fiduciary duty to the corporation by "wilful misconduct, gross misjudgment or ignorance." *See* Compl. at ¶ 39. The Trustee specifically asserts that the Defendant Directors breached their duties by not obtaining proper audits of Cascade and its subsidiaries, and for signing off on SEC filings which contained false information. *Id.* at ¶ 35. This matter was referred to the Bankruptcy Court for pre-trial proceedings (D.E.# 30) and referred back to the District Court by Judge Mark in his September 4, 1997 Order wherein Judge Mark also denied Defendants' Renewed Motion for Summary Judgment (D.E.# 42). The parties objected to Judge Mark's Order and on January 7, 1997 in an Order of Reference (D.E.# 62), this Court referred the action to Magistrate Judge Garber for a report and recommendation.

### K & S Action Procedural History

In the K & S action, Welt sued the K & S law firm and its two named partners (hereinafter "Defendants") alleging professional negligence (Count I), breach of fiduciary duty (Count II), preferential transfers pursuant to 11 U.S.C. § 547 (Counts III and IV), fraudulent conveyance pursuant to 11 U.S.C. § 548 (Count V), and fraudulent transfer pursuant to Fla. Stat. § 726.106(1) (Count VI). The substance of Welt's complaint stems from his allegation that "[i]n the exercise of reasonable care [Defendants] knew or should have known that management's representation [to the public] and [Cascade's] ... financial reports were unreliable." Compl. at ¶ 35. As such, Defendants failed to report Cascade's true condition to the board of directors which, in turn, assisted in the fraud's commission. *Id.* at ¶ 37. In addition, the Trustee alleges that if the Defendants had fulfilled their duty of care and had accurately reported to Cascade's directors, Cascade

---

**3.** Judge Mark dismissed the complaint against Defendant Lawrence Moses on February 1, 1995

(D.E. # 43 in 94–0536–BKC–RAM).

would not have been artificially prolonged past the point of its insolvency. Defendants moved for summary judgment on these claims. Judge Mark of the United States Bankruptcy Court[4] issued an Order granting in part and denying in part the Motion for Summary Judgment and referred this case back to the District Court (D.E.# 48). On January 7, 1997, this Court referred this case to Magistrate Judge Barry Garber for a report and recommendation as to the Motion for Summary Judgment.

## STANDARD OF REVIEW

In his report and recommendation, Judge Garber stated that the appropriate standard of review should be like that of a bankruptcy appeal. *See* Judge Garber's Omnibus Report and Recommendation at 7. However, rather than filing the *Welt v. Sirmans* action in the Bankruptcy court pursuant to this district's standard order of reference of all cases arising under Title 11, both cases were filed in the District Court. The two cases were referred to the Bankruptcy Court after the Trustee filed a motion to refer. The U.S. District Court judges[5] both noted that it would have been more appropriate for the Trustee to have filed this action in Bankruptcy court and then move to withdraw reference of the case for jury trial. Nevertheless, the judges referred the cases to the Bankruptcy court for resolution of all pre-trial and ordered that upon the conclusion of all Pre-trial matters, the Bankruptcy court would then refer the cases back to the District court. This Court finds that such a referral was pursuant to 28 U.S.C. § 157(c)(1).[6] Accordingly, pursuant to 28 U.S.C. § 157(c)(1) this Court shall review *de novo* the findings and conclusions of the Bankruptcy Court to which any party has timely and specifically objected. In addition, pursuant to 28 U.S.C.

§ 636(b)(1)(C) this Court shall review *de novo* the findings and conclusions of the Magistrate Court to which any party has timely and specifically objected.

As the motion before Judge Mark was for summary judgment, this Court must employ the summary judgment standard when considering the issues raised by the parties. A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the initial responsibility of informing the Court of the basis for its motion and of identifying those materials which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In response to a properly supported motion for summary judgment, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts which show a genuine issue for trial." Fed.R.Civ.P. 56(e). If the non-moving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the Court must enter summary judgment for the moving party. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine.* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis added). The Court is not to resolve factual issues, but may only determine whether factual issues exist. A material fact is one

---

**4.** The K & S action had also been referred to Judge Mark from the Southern District Court of Florida.

**5.** The K & S action was at that time before District Court Judge Hurley, while the *Welt v. Sirmans* action was before District Court Judge Ryskamp.

**6.** 28 U.S.C. § 157(c)(1) states that: "[a] Bankruptcy Judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."

which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248, 106 S.Ct. at 2510. Therefore, the inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

## DISCUSSION

### I. Professional Negligence [7]

Count I of the Trustee's Amended Complaint alleges that the Defendants committed professional negligence by failing to report the true condition of Cascade and its subsidiaries to the board of directors, and by failing to take action to prevent them from continuing business operations. The Trustee alleges that if the Defendants had fulfilled these duties, the business life of Cascade and its subsidiaries would not have been artificially prolonged past the point of its insolvency. The Defendants moved for summary judgment on this claim, arguing that the "Engine of Fraud" defense, as set forth in *Seidman & Seidman v. Gee*, 625 So.2d 1 (Fla. 3d DCA 1992), *appeal dismissed for lack of jurisdiction*, 653 So.2d 384 (Fla.1995),[8] applies to these facts and bars the Trustee from maintaining this cause of action.

In *Gee*, a corporation, through its appointed liquidator, brought suit against its accounting firm alleging that the firm's auditing negligence artificially prolonged the corporation's life past the point of solvency. Specifically, the plaintiff alleged that the accounting firm negligently failed to discover the non-existence of a $10 million certificate of deposit which, according to the corporation's manager, was an asset of the corporation. The accounting firm argued that the liquidator was barred from bringing this cause of action because the manager's fraud

is imputed to the corporation since the fraud was intended to and did benefit the corporation to the detriment of outsiders. The *Gee* court agreed with the accountants and stated:

> Where it is shown, without dispute, that a corporate officer's frauds intended to and did benefit the corporation, to the detriment of outsiders, the fraud is imputed to the corporation and is an absolute defense to the corporation's action against its accounting firm for negligent failure to discover the fraud.

*Id.* at 3. Furthermore, the *Gee* court found that it is the short-term benefit or detriment that is relevant to this determination. Whether the fraud was detrimental to the corporation in the long run is not the relevant inquiry under these circumstances. *Id.*

Judge Mark, in applying *Gee* to the facts at hand, ruled that the imputation defense did not bar the Trustee's recovery, but limited the amount of damages the Trustee could recover to the monies obtained by the corrupt directors. Magistrate Judge Garber, in reviewing Judge Mark's opinion, suggested reversal on the basis that the fraud imputed to Cascade was a total bar to any recovery on behalf of Cascade. In essence, Judge Mark found that this was a "hybrid case" under *Gee* in which the director's fraud was intended to and did benefit both Cascade and Incendy. To the contrary, Judge Garber stated that there cannot be a "hybrid case" under the *Gee* analysis. He concluded that the benefit received by Cascade required that the fraud be imputed to the corporation thereby barring the Trustee's cause of action.

Although both parties failed to present the issue to either Judge Mark or Magistrate Judge Garber, one important threshold matter must be addressed: that issue is whether the imputation of fraud defense applies to a trustee in bankruptcy as opposed to a party

---

7. The Court notes that in the proceedings before Judge Mark and Magistrate Judge Garber, the Defendant Directors in the *Welt v. Sirmans* action expressly adopted K & S's arguments that the Trustee is precluded from maintaining his negligence action against them as a result of the Florida Third Circuit Court of Appeal's decision in *Seidman & Seidman v. Gee*, discussed at length *infra*. Hence, the portion of this opinion which

relates to claims of negligence against K & S is equally applicable to the Defendant Directors.

8. Intermediate state court decisions are binding on federal courts unless there is a persuasive indication that the state's highest court would decide the issue differently. *See Insurance Co. of North America v. Lexow*, 937 F.2d 569, 571 (11th Cir.1991).

recovering for the benefit of its shareholders.[9]

 State law governs the issue of whether a corporate officer's knowledge is imputed to a corporation that is asserting state law causes of action. *See O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 84, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). As stated above, in *Gee*, the liquidator filed a complaint against the corporation's accountant for negligently failing to discover the director's fraud. *Gee*, 625 So.2d at 3. The accountants defended by stating that the fraud of the director was imputed to the corporation thereby barring a suit on the company's behalf to recover losses resulting from the fraud. The liquidator failed to argue that the imputation of fraud did not apply to him as liquidator of the company. Accordingly, the *Gee* court ruled that the liquidator could not maintain the action on behalf of the corporation. *Id.* On rehearing, the Department of Insurance filed an amicus brief arguing that even if the manager's fraud can be imputed to the company, it should not have barred the liquidator from bringing suit because he stands in larger shoes than the company itself. *Id.* at 4. However, the *Gee* court refused to consider this legal argument since it had not been raised by the parties below; but the court explicitly stated that it did not reject such an argument. *Id.* This issue, which the *Gee* court did not consider on the merits, is the exact issue which shall be addressed by this Court.

After much research, there appears to be no Florida case law on the issue of whether the fraud of a director should be imputed to a trustee of that corporation. The United States Supreme Court in *O'Melveny, supra* 512 U.S. at 79, noted that federal courts may have difficulty in deciding the imputation issue in light of a lack of state law precedent. Nevertheless, the Court urged federal courts to rule as the particular state's supreme court would:

> Cases like this one, however, present a special problem. They raise issues, such as the imputation question here, that may not have been definitively settled in the state jurisdiction in which the case is brought, but that nevertheless must be resolved by federal courts. The task of the federal judges who confront such issues would surely be simplified if Congress had provided them with a uniform federal rule to apply. As matters stand, however, federal judges must do their best to estimate how relevant state courts would perform their lawmaking task, and then emulate that sometimes purely hypothetical model.

*Id.* at 90 (Stevens, J. concurring). Therefore, although *Gee* does not directly address the issue confronting this Court, an examination of the underlying rationale of *Gee* is particularly instructive as to how a Florida state court would rule on the issue.

In reaching its decision, the *Gee* court relied heavily on *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). The issue in *Cenco* was whether a corporation could maintain an action against its accountants for failing to uncover a director's fraud. In *Cenco*, however, it was the corporation itself that brought the suit; not a receiver or trustee. The Seventh Circuit Court of Appeals, predicated its decision on the underlying objectives of tort liability: (1) to compensate the victims of the wrongdoing; and (2) to deter future wrongdoing. With respect to the first objective, the *Cenco* court noted that since it was the corporation suing, any judgment in favor of the corporation would benefit its corrupt directors.

> A judgment in favor of Cenco on its claim against Seidman would not differentiate among these classes, but would benefit every stockholder as of the date of the judgment in proportion to the number of shares he owned.

> Once the real beneficiaries of any judgment in favor of Cenco are identified, it is apparent that such a judgment would be perverse from the standpoint of compensating the victims of the wrongdoing.

---

9. A trustee in bankruptcy has a duty to recover property of the estate for the benefit of the parties in interest. 11 U.S.C. § 704. Pursuant to 11 U.S.C. § 726, general unsecured creditors receive priority treatment over shareholders of the corporation.

Among the people who bought stock in Cenco before the fraud began are the corrupt officers themselves. To the extent they are still stockholders in the company, they would benefit pro rata from a judgment in favor of Cenco.

*Id.* at 455 (parenthetical omitted).

Similarly, the second objective of tort liability, deterrence, favored prohibiting Cenco from maintaining an action on its own behalf against the independent auditor who failed to prevent its fraud. The court determined that if owners of corrupt enterprises were allowed to shift the costs of the corporation's wrongdoing to an auditor, their incentive to hire honest managers and monitor their behavior would be reduced. *Id.* at 455–56. Therefore, the *Cenco* court concluded that the objectives of tort liability would not be served by allowing the corporation to maintain an action against its auditors for failing to discover the officers' fraud. *Id.*

One year later in *Schacht v. Brown,* 711 F.2d 1343 (7th Cir.1983), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983), the Seventh Circuit Court of Appeals again faced the issue of whether an officer's fraud should be imputed to the corporation. The important fact distinguishing *Schacht* from *Cenco* was that in *Schacht,* it was a liquidator of the corporation bringing the action against the auditors, as opposed to the corporation itself. The Seventh Circuit engaged in the same two-pronged analysis of tort liability as it had in *Cenco,* but reached the opposite result.

With respect to the first factor, compensation of the victims, the *Schacht* court noted that unlike in *Cenco,*

any recovery by the [liquidator] from the instant suit will inure to Reserve's estate. And under the distribution provisions of the governing liquidation statute, it is the policyholders and creditors who have first claim (after administrative costs and wages owed) to the assets of the estate. Thus, the claims of these entirely innocent parties must be satisfied in full before Re-

serve's shareholders, last in line for recovery, receive anything.

*Id.* at 1348. Since the beneficiaries of any successful judgment in *Schacht* would be the honest creditors and policyholders, as opposed to the wrongdoers themselves, the Seventh Circuit explicitly distinguished *Cenco.* As for the second objective of tort liability, deterrence, the court again distinguished *Cenco:*

there is no evidence that the wrongdoing officers of Reserve would directly from the instant suit. There is also no evidence here of the existence of large corporate shareholders capable of conducting an independent audit, as in *Cenco,* and whose lack of investigatory zeal would be rewarded by a decision favorable to the [liquidator].

*Id.* at 1349. Therefore, the *Schacht* court essentially distinguished *Cenco* because a liquidator brought the action, as opposed to the corporation itself.

As stated above, the *Gee* court did not address the specific issue before this Court. This Court is of the opinion that had the *Gee* court addressed this issue, it would not have permitted the imputation defense to bar the Trustee's suit against K & S.

Applying the two-pronged tort liability analysis espoused in both *Cenco* and *Schacht,* this Court finds that any recovery by the Trustee would serve to properly compensate the victims of the wrongdoing and deter future wrongdoing. With respect to the first factor, any recovery by the Trustee from the instant suit would not benefit Cascade, but rather the creditors of Cascade. 11 U.S.C. § 726.[10] Clearly, Incendy will not benefit from any judgment that the Trustee achieves against K & S. Second, as to the deterrence factor, "permitting recovery in this case would not send unqualified signals to shareholders that they need not be alert to managerial fraud since they may later recover full indemnification for that fraud from third party participants." *Schacht,* 711 F.2d at 1349. This suit will further the goal of deterrence

---

10. This conclusion is consistent with Section 726 which provides a scheme for distribution of the Debtor's assets. General unsecured creditors of Cascade must be paid in full before any stock-

holders of Cascade can recover. *See* 11 U.S.C. § 726; *Hohenberg v. Hohenberg (In re Hohenberg),* 191 B.R. 694, 702 (Bankr.W.D.Tenn. 1996).

by discouraging third parties from participating in schemes to defraud another. *See Drabkin v. L & L .Constr. Assocs. (In re Latin Inv. Corp.)* 168 B.R. 1, 6 (Bankr.D.C. 1993); *see also Tew v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1551, 1560 (S.D.Fla. 1990), *amended by,* 741 F.Supp. 220 (S.D.Fla. 1990).

Courts have previously applied the objectives of tort liability to allow a proceeding to continue on behalf of a corporation against such corporation's professionals for failing to discover fraud on the part of the corporation's officers and directors. *See, e.g., Phar–Mor, Inc. v. Coopers & Lybrand (In re Phar–Mor, Inc., Securities Litig.),* 900 F.Supp. 784, 787 (W.D.Pa.1995) (noting that where claims against accountants will be assigned to a litigation trust for the benefit of secured and unsecured creditors, and neither the equity holders nor fraudulent directors would benefit from the corporation's recovery, the objectives of tort liability are served); *Drabkin* 168 B.R. at 6 (finding that the policy concerns of *Cenco* were not present because the shareholders who committed the fraud would not receive any distribution); *see also In re Stat–Tech Securities Litig.,* 905 F.Supp. 1416, 1423 (D.Colo.1995) (holding that "[w]here, as here, recovery from defendants would benefit the creditors of the estate, not the wrongdoers, the company is not barred from seeking damages against allegedly corrupt former officers and directors.").

Other courts have come to similar results for a different reason. These courts have concluded that the fraud which is imputed to the corporation, is not imputed to the corporation's trustee or receiver.

> While recognizing the general rule that a receiver, like a bankruptcy trustee, occupies no better position than that which was occupied by the party for whom he acts, the Court found that defenses based on the party's unclean hands or inequitable con-

duct do not generally apply against a party's receiver.

*Waslow v. Thornton (In re Greenberg ),* 212 B.R. 76, 91 (Bankr.E.D.Pa.1997) (citing *F.D.I.C. v. O'Melveny & Myers,* 61 F.3d 17, 19 (9th Cir.1995)); *see also Scholes v. Lehmann,* 56 F.3d 750, 754 (7th Cir.1995), *cert. denied,* 516 U.S. 1028, 116 S.Ct. 673, 133 L.Ed.2d 522 (1995); *Gordon v. Basroon (In re Plaza Mortgage and Fin. Corp.),* 187 B.R. 37 (Bankr.N.D.Ga.1995).

For the foregoing reasons, this Court concludes that if the issue as framed by this Court would be squarely presented to a Florida state court would permit a trustee to bring a claim for damages stemming from a third party's negligent failure to discover a fraud perpetrated by such corporation's officers and directors.[11] Accordingly, the Defendants Motion for Summary Judgment with respect to Count I of the Trustee's Amended Complaint is DENIED.[12]

## II. Breach of Fiduciary Duty

■ The next issue for consideration is whether Judge Mark erred in recommending entry of Summary Judgment in favor of Defendants on Count II of the Amended Complaint—breach of fiduciary duty. "There is no relationship between individuals which involves a greater degree of trust and confidence than that of attorney and client." *Smyrna Developers, Inc. v. Bornstein,* 177 So.2d 16, 18 (Fla. 2d DCA 1965). Accordingly, the attorney-client relationship obligates an attorney to represent his client "with the utmost degree of honesty, forthrightness, loyalty and fidelity." *Id.* "[A]n attorney breaches the duty of loyalty when [he] obtains a personal advantage from the client or when there are circumstances that create adversity to the client's interest." *Resolution Trust Corp. v. Holland & Knight,* 832 F.Supp. 1528, 1531 (S.D.Fla.1993) (citations omitted). An attorney, therefore, cannot al-

---

**11.** In light of this Court's holding that the imputation defense is inapplicable to the Trustee, Judge Mark's Oral Ruling is overruled as to his finding that the imputation defense is a partial bar to the Trustee's suit against the Defendants on Count I of the Amended Complaint. Although Judge Mark's hybrid analysis under *Gee* does not apply here, that does not necessarily prevent application of such an analysis under different circumstances.

**12.** This holding also applies to the Defendant Directors' Renewed Motion for Summary Judgment in the *Welt v. Sirmans* action.

low his interest in the suit to become adverse or hostile to his client's interest. *See, e.g., F.D.I.C. v. Martin,* 801 F.Supp. 617 (M.D.Fla.1992) (finding a breach of fiduciary duty where attorney's failed to disclose material loan information to a client); *Resolution Trust,* 832 F.Supp. at 1528 (holding that plaintiff could plead breach of fiduciary duty and legal malpractice where plaintiff claimed that defendant preferred the interest of a third party over that of his client).

■ In Count II of the amended complaint, Welt claims that K & S breached its fiduciary duty to Cascade by failing to disclose material information to the board regarding Incendy's activities. Welt argues that K & S received personal compensation from Incendy which caused K & S to "accede[] to Incendy's stonewalling during attempts at due diligence to verify the factual statements made in forms 10–K and other documents utilized to sell Cascade securities to the public." Trustee's Objections to Magistrate Judge Garber's Omnibus Report and Recommendation at 13. In particular, Welt points out that Incendy gave K & S 50,000 shares of Cascade stock, provided Aaron Karp's wife a Mercedes leased by Cascade, and provided Aaron Karp's daughter with employment for which she received approximately $20,000 in compensation.

This Court agrees with both Judge Mark and Magistrate Judge Garber's conclusion that the evidence in the record does not support a finding of an issue of material fact as to whether K & S preferred the interests of Incendy over those of Cascade. Welt argued in his objections that two pieces of evidence created an issue of material fact.[13] This evidence although possibly creating an issue as to whether K & S should have investigated the leases as part of its legal

duties, is insufficient to bypass a motion for summary judgment. Thus, as Judge Garber stated in his report and recommendation, "[e]ven accepting the providing of stock to Karp and a leased Mercedes to his wife as inappropriate consideration there is no evidence in the record that because of these gifts, K & S acted disloyal to the corporation." Judge Garber's Omnibus Report & Recommendation at 20. Accordingly, after considering the Trustee's objections and the record as a whole, this Court affirms Judge Mark's decision to grant Summary Judgment in favor of Defendants on Count II of the Trustee's Amended Complaint.

### III. Fraudulent Conveyance

Pursuant to 28 U.S.C. § 636(b)(1), this Court adopts Magistrate Judge Garber's Report & Recommendation affirming Judge Mark's Oral Ruling granting Summary Judgment in favor of the Defendants with respect to Counts V and VI of the Amended Complaint.[14]

### CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants' Motion for Summary Judgment in Case No. 93–8629–CIV–NESBITT (Bankruptcy Adversary Proceeding No. 94–0807–BKC–RAM) is **GRANTED IN PART** and **DENIED IN PART** as follows:

A. The Motion is **GRANTED** as to Counts II, V, and VI of the Amended Complaint (Counts III and IV of the Amended Complaint have been voluntarily dismissed by the Trustee).

B. The Motion is **DENIED** as to Count I of the Amended Complaint.

---

**13.** First, Welt points out that Karp sent a letter to John Sirmans, a Cascade director, stating that K & S "glossed over the counters leased in the women's clothing retail chain." *See* Trustee's Objections at 13. Second, Welt cites this Court to Karp's deposition during which he was asked about a newspaper article wherein Cascade reported that it had counters in a major East Coast retailer that accounted for most of Cascade's revenues. *Id.* at 14–15. Karp admitted that when he asked Cascade about the article he was told that "it was a lot of s...t." *Id.*

**14.** This Court notes that one basis for Magistrate Judge Garber's recommendation to affirm Judge Mark's Oral Ruling with respect to Counts V and VI is the holding in *Gee v. Seidman & Seidman, supra.* However, as this Court has ruled that *Gee* does not bar the Trustee's action on negligence, we do not agree that *Gee* supports Judge Garber's recommendation as to these counts. Nevertheless, this Court finds that with the exception of Judge Garber's citation to *Gee,* his opinion with respect to Counts V and VI is accurate.

2. Defendants' Renewed Motion for Summary Judgment in Case No. 93–8628–CIV–NESBITT (Bankruptcy Adversary Proceeding No. 94–0536–BKC–RAM) is **DENIED.**