771 So.2d 1181 (2000)
Naomi R. CHASE, Appellant,
v.
Lennon E. BOWEN, III, Esquire, et al., Appellees.
No. 5D99-890.
District Court of Appeal of Florida, Fifth District.
October 6, 2000.
Rehearing Denied November 27, 2000.
*1182 Richard W. Epstein and Stephanie A. Yelenosky of Greenspoon, Marder, Hirschfeld, Rafkin, Ross & Berger, P.A., Orlando, for Appellant.
Donald L. O'Dell of Meier, Lengauer, Bonner, Muszynski & Doyle, P.A., Orlando, for Appellees.
HARRIS, J.
Naomi Chase sued Lennon Bowen for legal malpractice because he prepared her mother's revised will omitting Naomi as a beneficiary and instead making major bequests to her mother's business associates, the Lavenders.[1] Her claim is based on her allegation that Bowen was "her lawyer" as well as the lawyer for her mother and the Lavenders and that Bowen was "mandated ... by the ethical obligations imposed by his profession" to notify her, her mother and the Lavenders of his "irreconcilable conflict of interest" in preparing her mother's rewrite of her will. The trial court's summary judgment in favor of Bowen is now before us. We affirm.
Although there is no dispute that Bowen has from time to time during the relevant years represented the daughter, her mother and the Lavenders, the record is not clear exactly what, at the time of the preparation of the mother's contested amended will and trust, the nature of Bowen's alleged representation of Naomi was. She alleges only that, "Beginning in 1988 and continuing through 1996, ... Bowen drafted will and trust documents for [Naomi] and redrafted the will and amended the trust agreement of [the mother]."
Naomi apparently believes that Rule 4-1.7, "Conflict of Interest; general rule,"[2] requires that if a lawyer represents a group of people in one matter or in various matters, he must necessarily get the approval of all in order to represent any one of such group in an unrelated matter. We do not so read the rule. If a lawyer prepares the wills of various members of a family, he thereby assumes no obligation to oppose any testator or testatrix from changing such will. Nor is he precluded from assisting such testator or testatrix in the redrafting.[3] There are no allegations that Bowen conspired with the Lavenders to induce the mother to change her will nor is there an allegation that Bowen used his influence to bring about the mother's change of heart. Naomi simply had no legal right to object to Bowen representing her mother when the mother desired to change her previous will prepared by him.
We believe the supreme court in The Florida Bar v. Moore, 194 So.2d 264, 269 (Fla.1966), explained the principle behind the rule when it stated:
We are of the opinion that a lawyer represents conflicting interests, within the meaning of the Canon, when it becomes his duty, on behalf of one client, to contend for that which his duty to another client would require him to oppose.
It is our view that a lawyer who prepares a will owes no duty to any previous beneficiary, even a beneficiary he may be representing in another matter, to oppose the testator or testatrix in changing his or her will and, therefore, that assisting in that change is not a conflict of interest.
We reject the dissent's invitation to apply the tort of intentional interference with inheritance under the facts of this case. We hold as a matter of law that an attorney who merely drafts the will of one who changes his or her mind and excludes *1183 from a later will a beneficiary who had been included in an earlier one cannot be found to have intentionally interfered with the inheritance of such beneficiary. Drafting a will in accordance with the instruction of the testator or testatrix is simply not tortious conduct.
AFFIRMED.
PETERSON, J., concurs.
W. SHARP, J., dissents, with opinion.
W. SHARP, J., dissenting.
I agree that Count II of the complaint failed to sufficiently plead a cause of action against Bowen, but I would remand this case with directions that appellant be allowed to replead, since it appears she may be able to state a cause of action against him.
Naomi Chase (through her Guardian, Jane Aggers) appeals from a partial final summary judgment rendered against her and in favor of Bowen, her attorney, in litigation she brought concerning her mother's (Reah Chase) estate, her expected inheritance, and various properties which had been transferred to third parties, William and Sharon Lavender. At issue in this appeal is the propriety of the trial court's conclusion that count two of the amended complaint, which deals with Bowen's possible tort liability to Naomi, does not present a viable malpractice claim against him.
The record establishes the following facts and circumstances, read in the light most favorable to Naomi.[1] Naomi became disabled during the 1940's when she was sixteen or seventeen years old, due to epilepsy. She has never been able to work outside her home. She lived with her mother, Reah Chase, who lived with her, and supported and cared for her, until Reah died in 1997.
Reah was involved in a number of business transactions and investments in Lake County during the 1960's. She was wealthy and successful. At that time she and Naomi became friends with William Lavender and his wife Sharon, and an attorney, Bowen. All of these people were mutual friends. Bowen represented Reah in some business transactions, as well as the Lavenders, and he prepared estate planning documents for Reah as well as for Naomi. In 1974, Bowen prepared a will and trust instrument for Reah. Naomi was the beneficiary and she was to receive income for her life time.
At some point, Reah had Bowen redraft her will and amend the trust to exclude Naomi, and solely benefit the Lavenders. Reah died in July of 1997 without changing her will or trust, thus depriving Naomi of her expected inheritance. In 1997, Naomi filed for the appointment of a voluntary guardian, and Jane Aggers became Guardian of her property.
After investigating the situation, Aggers filed this suit against the Lavenders and one of their businesses for fraud, to impose a constructive trust, to establish an equitable lien, subrogation, conversion and replevin, based on allegations they misappropriated property and money which belonged to Reah and Naomi, and breached their agreement to give Reah and Naomi lifelong care in their home in exchange for payment in full of the mortgage on the Lavenders' home. The complaint also contained two counts against Bowen: count one, which was dismissed;[2] and count two, *1184 the subject of this proceeding, which alleged legal malpractice against Bowen in his representation of Naomi.
The essence of Naomi's malpractice claim against Bowen is that he committed a breach of professional ethics when he represented Naomi, Reah, and the Lavenders continuously and over a period of time, including the time when he drafted amendments to Reah's trust and will, which disinherited her daughter and replaced her with the Lavenders, and that he did not recuse himself or obtain Naomi's consent, after disclosure to her of his adverse representation.
Rule 4.-1.7(a) of the Rules of Professional Conduct provides:
A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other clients; and
(2) each client consents after consultation.
Naomi contends that if Bowen had consulted with Naomi and obtained her consent to represent her mother, or if he had refused to represent Reah and sent her to another lawyer with no conflict of interest, she might have had a chance to inquire as to the reasons for her mother's change of mind and ascertain whether the change was the product of undue influence. Due to his failure to comply with the ethical rule quoted above, Naomi lost that opportunity.
It is clear that an attorney should not represent two different clients (without disclosure and consent), who have adverse interests in the same transaction or series of transactions, all of which involve the same clients.[3] Nor can an attorney, after representing a client, assume the representation of a different client in a later matter that is adverse to the first client's interest, again without consultation and consent.[4] As alleged in this case, when Bowen redrafted Reah's trust and will, he represented not only Reah and Naomi, but also the Lavenders, the new beneficiaries. For purposes of a summary judgment motion, it appears Bowen's actions may have created a conflict of interest and a violation of this ethical rule. See Haynes v. First National State Bank of New Jersey, 87 N.J. 163, 432 A.2d 890 (1981); Pascale v. Pascale, 113 N.J. 20, 549 A.2d 782 (1988); Matter of Estate of Shano, 177 Ariz. 550, 869 P.2d 1203 (1994). Compare Estate of Koch, 18 Kan.App.2d 188, 849 P.2d 977 (1993). The trial judge also concluded "at best" there had been a violation of ethical rules.
The Professional Ethics of The Florida Bar Op 95-4 (May 30, 1997), approved by the Board of Governors in May of 1997, supports the conclusion that a breach of professional ethics occurred in this case. That opinion deals with a hypothetical husband and wife, who consult an attorney to draft their wills and do joint estate planning. Later the husband comes to the attorney seeking his advice on whether or not his wife would have the right to elect against his will, if she survived him, because he had executed a codicil leaving a substantial disposition to his mistress (unknown to his wife). This puts the lawyer in an ethical dilemma because he owes a duty of confidentiality to the husband, and yet he owes a duty of communication to the wife and a duty of loyaltynot to take steps to adversely affect her interest without her knowledge and consent.
*1185 The opinion concludes that the duty of confidentiality takes precedence, and the lawyer can not disclose the information to the wife. Further, the Committee concludes, the lawyer must withdraw from the representation of both the husband and the wife. In so doing, the lawyer should inform the wife that a conflict of interest has arisen that precludes the lawyer from continuing to represent her, and he could also say both the husband and wife should retain separate counsel. The Committee recognized that a sudden withdrawal by a lawyer almost certainly would raise suspicions on the part of the wife, which might alert her to the substance of the husband's adverse confidence. This appears to be more stringent than other states' views, which would allow the lawyer, in his discretion to make the disclosure to the wife, but which consistent with the Florida opinion, would still require the lawyer to withdraw from representing either one.
Although this Florida opinion concerns a joint representation case, it is not clear in the instant case that Bowen was not representing Naomi and Reah jointly in their estate planning. But even if the representation in this case was not joint, the opinion would be applicable to require Bowen to withdraw from representing Reah, although it might not require Bowen to tell Naomi a conflict of interest had arisen and that he could no longer represent either of them.
However, it does not follow that, without more, Naomi has a legal malpractice claim against Bowen. At the hearing below, counsel for Naomi conceded that breach of a rule of professional conduct does not by itself, give rise to a cause of action for malpractice. More is required.
There are a few cases in which breach of a lawyer's ethical duties owed to a client have provided part of the basis for an independent tort suit against the attorney. See, e.g., K.M.A. Associates, Inc. v. Meros, 452 So.2d 580 (Fla. 2d DCA 1984) (suit for legal malpractice based on attorney's possible violation of his duty of fair dealing and loyalty to a client in a business deal between them, which resulted in loss to client); Waldeck v. Marks, 328 So.2d 490 (Fla. 3d DCA 1976) (tort suit against attorney was sufficiently stated in complaint which charged the attorney breached his duty of good faith and fair business dealing in a joint development project, resulting in loss to the client); Abstract and Title Corp. of Florida v. Cochran, 414 So.2d 284 (Fla. 4th DCA 1982) (breach of attorney's duty of good faith dealings with client and loyalty held sufficient to void an option of first refusal the attorney had obtained for himself, pursuant to a land purchase from a client). In all of these cases, the client suffered an alleged or proven economic loss from the business deal, which had redounded to the attorney's economic advantage. In the instant case, it is not alleged that Bowen obtained any economic benefit or advantage.
In two other Florida cases, Singleton v. Foreman, 435 F.2d 962 (5th Cir.1970) and Resolution Trust Corp. v. Holland and Knight, 832 F.Supp. 1528 (S.D.Fla.1993), the alleged breaches of ethical duties owed to clients did not arise out of joint business dealings with the attorneys, and did not result in economic advantage to the attorneys and the client's alleged loss. In Singleton, the court held that the client stated a cause of action against her out-of-state attorney for an independent tort, which stemmed from his hostile and abusive representation of her during her divorce case, when he attempted to abort a settlement of the case. By his actions, the court said the attorney breached his confidential relationship with his client, allowed himself to be placed in an economic and personal place hostile to the client, and failed in his professional obligation to withdraw from the case. In Resolution Trust, the court held that a complaint stated a cause of action against a law firm in favoring one client over another, which created a breach of the firm's fiduciary duty (duty of loyalty and obligation of full disclosure), and which *1186 also resulted in an economic loss to the client who was not favored.
The Resolution Trust court quoted from 1 Ronald E. Mallen and Jeffrey M. Smith, Legal Malpractice, § 11.1 at 633 (3d ed 1989):
The [breach of fiduciary duty] constitutes a wrong which is distinct and independent from professional negligence but still comprises legal malpractice.
The court concluded that Resolution Trust Corporation had pled both of the malpractice theories in two separate counts; i.e., breach of duty of care (failure to read security documents properly), and breach of a fiduciary duty (failure to disclose conflict of interest; breach of duty of loyalty). The two counts were not duplicative, but were two distinct theories of malpractice pled alternatively. Additional elements of proof in those cases were the attorney's causation of the clients' loss or damages, and intentional breach of the fiduciary duty owed the client.
Florida has recently recognized and commenced evolving the common law tort of intentional interference with inheritance.[5]Davison v. Feuerherd, 391 So.2d 799 (Fla. 2d DCA 1980); Allen v. Leybourne, 190 So.2d 825 (Fla. 3d DCA 1966). The tort is partially based on Restatement of Torts 2d § 774b:
One who by fraud, duress, or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he or she would otherwise have received is subject to liability to the other for loss of the inheritance....
The actor must have interfered with the inheritance by means that are independently tortious in character [including]... tortious abuse of fiduciary duty....
The basic elements of this tort are:
1. the existence of a fixed expectancy;
2. intentional interference with the expectancy through tortious conduct;
3. causation (a reasonable probability that the expectancy would have been carried out, but for the wrongful acts of the defendant); and
4. damages.[6]
In addition, Florida cases also require that challenges to a testator's will be made in the context of probate litigation, if appropriate. See Martin v. Martin, 687 So.2d 903 (Fla. 4th DCA 1997); DeWitt v. Duce, 408 So.2d 216 (Fla.1981).
In this case, the general allegations of the complaint, coupled with those of count two, suggest that Naomi could possibly allege such a cause of action against Bowen. Sufficient facts are stated to indicate Reah had a fixed intent to leave substantial properties to her daughter, as demonstrated by her prior will and trust, and statements to Bowen. Naomi also alleged that Bowen's action in revising her mother's will and trust adversely to her, while continuing to represent her, was tortious (breach of a fiduciary duty owed to her) or malpractice because it was done intentionally and in violation of professional ethical rules. Causation may pose a problem in this case for Naomi, but she may be able to plead facts to show she could have taken steps to change the outcome, had she been alerted to the existence of a conflict of adverse interest.
I believe enough facts have been alleged generally that Naomi might be able to state a cause of action against Bowen for interference with her inheritance, caused and achieved by his breach of fiduciary duty owed to her as a client while representing *1187 the interests of Reah and the Lavenders, which were adverse to hers. Accordingly, It would affirm, but remand with directions that Naomi be given an opportunity to replead against Bowen. See Henshall v. Lowe, 657 So.2d 6 (Fla. 2d DCA 1995); Allen v. Leybourne.
NOTES
[1] This appeal does not involve Naomi's claims against the Lavenders.
[2] Rules of Professional Conduct.
[3] This would not be true in the case of mutual wills prepared by the attorney. Here, he would be representing two people in a common enterprise and would be precluded from representing one who later wishes to redraw from such common testamentary plan. Such is not present in this case.
[1] Wodonos v. Wodonos, 62 So.2d 78 (Fla. 1952); Florida Farm Bureau General Ins. Co. v. Ins. Co. of No. America, 763 So.2d 429 (Fla. 5th DCA 2000); Bross v. Wallace, 600 So.2d 1198, 1199 (Fla. 5th DCA 1992).
[2] This count asserted a third party beneficiary claim against Bowen based on legal malpractice in his representation of Reah, which frustrated Naomi's inheritance under the will. The facts in this case do not fit the typical pattern of cases allowing an intended beneficiary to sue a lawyer, after the lawyer's poor drafting or advice has caused the lapse or failure of an intended bequest, expressed in a will. See Espinosa v. Sparber, Shevin, Shapo, Rosen and Heilbronner, 612 So.2d 1378 (Fla. 1993); Kinney v. Shinholser, 663 So.2d 643 (Fla. 5th DCA 1995); DeMaris v. Asti, 426 So.2d 1153 (Fla. 3d DCA 1983). The problem for Naomi is that the expressed intent of her mother's will was carried out, and Bowen was effective in his draftsmanship.
[3] The Florida Bar v. Joy, 679 So.2d 1165 (Fla.1996); The Florida Bar v. Moore, 194 So.2d 264 (Fla.1966).
[4] The Florida Bar v. Marke, 669 So.2d 247 (Fla.1996).
[5] DeWitt v. Duce, 408 So.2d 216 (Fla.1981); Nita Ledford,Intentional Interference with Inheritance, 30 Real Prop. Prob. & Tr. J. 325 (Summer ed.1995); Fletcher Belcher, Litigation Under the Florida Probate Code, Ch. 13; Anno: Liability in Damages for Interference with Expected Inheritance or Gift, 22 A.L.R.4th 1229 (1983).
[6] See Whalen v. Prosser, 719 So.2d 2 (Fla. 2d DCA 1998).