### In re MERIDIAN ASSET MANAGEMENT, INC., Debtor.

**Securities Investor Protection Corporation, and Securities Investor Protection Corporation, as Trustee of the Estate of Meridian Asset Management, Inc., Plaintiff,**

v.

**Capital City Bank and Capital City Bank, f/k/a Industrial National Bank, Defendant.**

**Bankruptcy No. 00–90029 TLH–4. Adversary No. 02–90036.**

United States Bankruptcy Court, N.D. Florida, Tallahassee Division.

June 25, 2003.

C. Edwin Rude, Jr., Esq., Tallahassee, FL, for Plaintiff.

Kenneth Hart, Esq., Tallahassee, FL, for Defendant.

## ORDER GRANTING DEFENDANT CAPITAL CITY BANK'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS CASE came before this Court on the Defendant Capital City Bank f/k/a Industrial National Bank's Motion to Dismiss Plaintiff Securities Investor Protection Corporation's (SIPC) First Amended Complaint. For the reasons discussed below Capital City Bank's Motion to Dismiss will be GRANTED. This Court has Jurisdiction over this adversary proceeding pursuant to § 78eee(b)(4) of the Securities Investor Protection Act (SIPA), 15 U.S.C. § 78aaa, et seq. This is not a core proceeding. Venue is founded upon 28 U.S.C. § 1409 in that this proceeding arises in or is related to the Meridian liquidation proceeding, Adversary No. 00–90029, initiated by an application for protective decree filed by SIPC, in the United States District Court for the Northern District of Florida pursuant to 15 U.S.C. § 78eee(b)(1).

## FACTS

Meridian was a financial services company offering brokerage and investment advice, which together with its principal officer, Robin McEachin (McEachin), falsely promised to invest and to oversee the investment of monies, funds, and credits belonging to and in the care of numerous clients. Meridian together with McEachin, maintained five checking accounts at Capital City Bank (Bank). The names of the five investor bank accounts were: (1) the Woodruff Trucking Pension Plan and Trust account; (2) the Woodruff Trucking Retirement Account; (3) Meridian Asset Management Customer Trust Account; (4) the Meridian Asset Management business account; and (5) the Meridian Asset Management, Inc. fbo Florida Police Benevolent Association account. Meridian, together with McEachin, promised its victim investors that their funds would be invested in mutual funds, retirement accounts, or other investment accounts. In fact, none of the monies were invested. From 1991 to 2000, Meridian, together with McEachin, embezzled Meridian investor funds held in the five accounts. Once the victim's funds were deposited in one of the five accounts, Meridian, together with McEachin, would use the funds in the accounts to pay operating expenses for McEachin's businesses, McEachin's personal expenses, and to pay other victim investors. For example, when money was due to one client, McEachin would take monies from another investor's account and disburse it, thereby promoting and concealing the fraud. McEachin was convicted of various federal offenses.

On August 1, 2000, the United States District Court found that the customers of Meridian were in need of the protection afforded by the Securities Investor Protection Act (SIPA). The Court's Order appointed the Securities Investment Protection Corporation (SIPC) as Trustee to liquidate Meridian and removed the liquidation to the United States Bankruptcy Court for the Northern District of Florida, Tallahassee Division.

SIPC, on its own behalf and as subrogee and assignee with respect to customer claims, and as the Trustee, on behalf of the estate of Meridian, and as bailee of customer property brings claims for: (1) negligence and gross negligence; (2) recoupment of the proceeds of fiduciary items; (3) breach of fiduciary duty to certain Meridian customers; (4) aiding and abetting the breach of fiduciary duties owed by others to Meridian; (5) conversion; (6) breaches of covenants of good faith and failure to Exercise Ordinary care; and (7) breach of warranty.

During the pendency of this adversary proceeding, the Bank filed its Motion to Dismiss the Plaintiff's First Amended Complaint. Therein, the Bank argues that this Bankruptcy Court does not have jurisdiction over this case because SIPC as Trustee lacks standing and has failed to state a claim. In particular, that the Complaint should be dismissed because: (1) the Complaint is so vague and incomprehensible that it violates Federal Rules of Civil Procedure 8(a) and 10(b), and Bankruptcy Rules 7008 and 7010 in that it does not include a short plain statement of each claim showing how the Plaintiff, in its various capacities, is entitle to relief; (2) SIPC as Trustee lacks standing to bring the present suit; (3) none of the seven counts of the Complaint state a claim upon which relief can be granted; (4) the Plaintiff failed to join two indispensable parties (Woodruff Trucking, Inc. Money Purchase Plan Trust, and the Florida Police Benevolent Association Money Purchase Pension Plan & Trust) and without this joinder, the rights of these Private Trusts will be determined without their participation as

well as the fact that the Bank could be subject to double liability; and (5) the economic loss rule bars the Plaintiff's claims for negligence, recoupment, breach of fiduciary duty, aiding and abetting breach of fiduciary duty and conversion when brought by SIPC as Trustee and representative of Meridian. Additionally, the Bank filed subsidiary motions, a Motion for More Definite Statement and a Motion to Compel Separation of Claims. Following these, SIPC entered its response to the Bank's Motion to Dismiss on February 18, 2003. The motion was heard on March 11, 2003.

## DISCUSSION

In ruling on a motion to dismiss a court must accept the allegations of the complaint as true and construe facts in the light most favorable to the plaintiff. *Sec. and Exch. Comm. v. Lambert*, 38 F.Supp.2d 1348, 1350 (S.D.Fla.1999) (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Further, a complaint should not be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief." *Id.* (*citing Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir.1986) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))). Similarly, a court will only grant a motion to dismiss when it is clear that no set of alleged facts will provide a basis of relief for the movant. *Id.*

■ In this adversary proceeding, SIPC, as stated in its Response, has brought its seven Count Amended Complaint in two basic capacities: (1) as Trustee of the Meridian Bankruptcy Estate, standing in the shoes of Meridian (which includes Meridian's status as bailee of its customer's property); and (2) as itself on its own behalf to recover funds it has previously advanced to the defrauded Meridian investors (Docket # 20 pg.1). In the second capacity, SIPC brings claims as assignee of customer claims and as statutory subrogee of Meridian's customer claims paid by SIPC. The Bank argues that the Complaint violates Bankruptcy Rules 7008 and 7010 in that the Complaint is vague, confusing, and cannot be understood because it fails to show how SIPC in its various capacities is entitled to relief, and combines claims within the same Count.

■ Bankruptcy Rule 7008 adopts the general rules of pleading as stated in Rule 8 of the Federal Rules of Civil Procedure. To comply with this Rule, the complaint must state a "short plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *O'Halloran v. First Union Nat'l Bank of Florida*, 205 F.Supp.2d 1296, 1299 (M.D.Fla. 2002) (*citing Conley v. Gibson*, 355, U.S. 41, 47, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) also see Bankruptcy Rule 7008 stating a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief". Although SIPC's complaint is somewhat vague in that it overlaps what claims are asserted in each of the various capacities, SIPC has alleged sufficient facts that put the Bank on fair notice of the claims and grounds against it. Evidencing this is the fact that the Bank was able to prepare, as part of its response at the hearing, an elaborate chart of the Counts, the capacities of SIPC in relation to these Counts and asserted defenses. "To comply with fair notice, a complaint should at least allege in general terms the acts, customs, practices, policies of the defendant in a manner sufficient to allow an informed response." *Id.* (*quoting Desai v.*

*Tire Kingdom, Inc.,* 944 F.Supp. 876, 879 (M.D.Fla.1996) (*citing Cummings v. Palm Beach County,* 642 F.Supp. 248, 249 (S.D.Fla.1986))). Therefore, because the Complaint was sufficiently plead to put the Bank on fair notice of the claims against it, the Bank's Motion to Dismiss pursuant to Bankruptcy Rules 7008 and 7010 are denied.

Next, the Bank argues that SIPC, as Trustee and representative of Meridian, on behalf of Meridian, lacks standing to bring the present suit.

Litigants in federal court must have standing in order to be able to bring a claim. *Fed. Deposit Ins. Corp. v. Morley,* 867 F.2d 1381, 1386 (11th Cir.1989) (*citing Valley Forge Christian College v. Am. United for Separation of Church and State,* 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700, 708; *Saladin v. Milledgeville,* 812 F.2d 687, 690 (11th Cir.1987)). A party who wishes to bring a complaint must satisfy a two-part standing test consisting of a constitutional component and prudential considerations. *Id.* at 1386 (*Valley Forge Christian College,* 454 U.S. at 472, 102 S.Ct. at 758, 70 L.Ed.2d at 709; *Saladin,* at 690). To fulfill the constitutional component, the plaintiff must show three elements: (1) that he has suffered an actual injury or shows such an injury is imminent; (2) that the injury is fairly traceable to the challenged conduct of the defendant; and (3) a favorable decision will redress the party's injury. *Id.* (*Valley Forge Christian College,* 454 U.S. at 472, 102 S.Ct. at 758). Next, the plaintiff has to demonstrate that prudential considerations do not preclude a court from hearing the claim. *Id.* Courts recognize three prudential factors that prevent the case from being heard: "(1) assertion of a third party's rights rather than individual legal rights; (2) allegation of a generalized grievance rather than an injury peculiar to

such litigant; and (3) assertion of an injury outside the statute's or constitutional provision's zone of interest." *Id.* (*Valley Forge Christian College,* 454 U.S. at 474–75, 102 S.Ct. at 759–60).

The Bank asserts that SIPC, standing in the shoes of Meridian, suffered no actual injury and failed to show any imminence of such injury. The Bank cites Florida law establishing the principle that a corporation is estopped from bringing an action against a third party when the corporation's own wrongdoing is what gave rise to the conditions causing the losses alleged. *Seidman & Seidman v. Gee,* 625 So.2d 1 (Fla. 3d DCA 1992). The Bank supports its position with *O'Halloran v. First Union Nat'l Bank of Florida,* 205 F.Supp.2d 1296 (M.D.Fla.2002). In *O'Halloran,* a church (Greater Ministries International Church) that was operating a Ponzi scheme opened up accounts in a major bank and also used that bank as a source of other financial services. The principals of the church were charged and convicted, leaving fifteen thousand victims who were swindled out of millions of dollars. The church was put into federal receivership. Subsequently, in the church's involuntary bankruptcy case, the trustee, on behalf of the church and the injured investors, sued the bank in negligence; assisting breach of fiduciary duties; aiding and abetting in tort; and breach of duty to warn and control. The bank argued that the trustee on behalf of the estate (the wrongdoer church) did not have standing to bring suit against the bank because the church's own fraud was responsible for the alleged losses which the trustee sought to recover. The *O'Halloran* court found for the bank noting that the church was merely a conduit for the stolen money of the church principals and the trustee should not be allowed to recover for the church estate what the church directors stole from the

investors to begin with. *Id.* at 1300, 1301. Rather, the proper party to assert a claim against the bank, assuming there was such a proper claim, was the defrauded investors. *Id.* Thus, the trustee's case on behalf of the estate was dismissed because the trustee lacked standing. *Id.*

The *O'Halloran* court relied on previous Florida law as outlined in *Feltman v. Prudential Bache Sec.,* 122 B.R. 466 (S.D.Fla. 1990). In that case, Gherman, a financial planner, formed two corporations to provide financial services to its clients and opened up accounts for these with the defendant bank. Similarly, accounts were set up at Prudential and the bank in the investors' names. Once an investor contributed to his Prudential account, the embezzlement began. Gherman directed money to be withdrawn from investors' Prudential accounts, then fraudulently endorsed the checks to the investors' checking accounts at the bank. He immediately transferred the money to his corporate accounts so that he could buy expensive personal items as well as to enrich family members. Ultimately, he wired all the money out of all accounts to an off shore bank and left the country only to be extradited from Japan. There, the bankruptcy trustee of the estate alleged claims against the bank and others for furthering the fraud, negligence, and participating in breach of fiduciary duty. The bank allegedly knew of suspicious deposits, withdrawals, and forged endorsements and by doing nothing they injured the corporations by extending their life, allowing dissipation of their assets. The *Feltman* court held that the corporations were shams and merely conduits for stolen money. *Id.* at 473, 474. Further, that any injury to the corporations due to deletion of bank account assets was illusory because "Everything Gherman stole from the debtor corporations, the debtors had stolen from the creditors." *Id.* at 474. Further still, al-

lowing the trustee to recover for the sham corporations against the bank would be inequitable. *Id.* Thus, because the corporations were not injured by their prolonged life, the trustee as representative of the debtor corporations had no standing to sue. *Id.* at 473

In its response to the Bank's Motion to Dismiss, SIPC argues that as Trustee for Meridian, standing in the shoes of Meridian, it does have standing to assert claims owned by Meridian. SIPC's Response never directly discounts any of the arguments or holdings in *O'Halloran.* Rather, SIPC attempts to collaterally discredit that precedent by distinguishing the case at bar with *Feltman,* the case that the *O'Halloran* court relied on in its standing analysis. SIPC, in so arguing its case, contends that three material issues in *Feltman* were significant and distinguishable from this case and that these differences are sufficient to permit a finding of standing. First is that the *Feltman* trustee alleged that the corporate debtors were sham corporations and mere conduits for stolen money. Here, SIPC contends, no such allegations were plead. Second, the trustee in *Feltman* was bringing his claim as the representative of "specific creditors," but here the suit is being brought on behalf of the estate. Third, that any money damages SIPC recovers on behalf of the estate will go to benefit creditors or their assigns and, thereby so doing, benefit the estate by decreasing its liabilities.

SIPC argues a major distinguishing point that supports SIPC's standing is that in the *Feltman* case, the trustee affirmatively alleged that the corporate debtors were sham corporations and conduits for stolen money. Thus, those corporate bank accounts did not suffer any actual injury when the bank accounts' life was extended due to the bank's alleged failure to investigate suspicious activity surrounding the

accounts. The *Feltman* court held that since the corporations were shams, set up by the wrongdoer to be conduits for stolen money, everything the wrongdoer took from the corporate accounts, the corporations stole from defrauded customers; therefore, their alleged injury was illusory. *Feltman*, at 474. However in this case, SIPC argues that it did not plead such allegations against the bank and, as a result, no inference could be drawn that Meridian's bank accounts were shams and conduits. Therefore, this Court must infer, for the purposes of this Motion, that the accounts were used for legitimate businesses services for its customers. SIPC argues that because no inference can be drawn, the *Feltman* holding (that the trustee, as representative of the corporation, had no standing) would not apply. Following this logic, the Meridian bank accounts, being legitimate, did suffer a recognizable injury as stated in the seven Counts and as a result the Trustee has standing to sue the Bank on behalf of the estate.

In this case, even though it was not specifically plead that Meridian accounts were shams, the facts as alleged show otherwise. Meridian did nothing but misappropriate and embezzle its customer's funds from the moment customer money hit the Meridian accounts; it was, in effect, running a Ponzi scheme. In doing so, McEachin exercised complete dominion and control over the accounts and treated them as his own, they were his alter-ego. Even when drawing all inferences in favor of the Trustee, it is apparent that the accounts were shams created to mislead customers and as a vehicle to channel money. The facts alleged do not even suggest

that Meridian performed legitimate business services for its customers and that McEachin worked to increase their net worth. Therefore, *Feltman's* holding applies and, like in *Feltman* and *O'Halloran*, Meridian's bank accounts were a facade of legitimacy and were solely used to defraud customers and embezzle their money: Any alleged injury to Meridian was illusory. Accordingly, SIPC's point of argument, fails. The *O'Halloran* court framed the issue plainly: Greater Ministries estate's own fraud was responsible for the financial losses that the trustee, standing in the shoes of the estate was attempting to recover. *O'Halloran*, at 1300. The *O'Halloran* court did not permit the trustee to collect from the bank any money that the estate had stolen from its investors in the first place. *Id.*

The second material and distinguishable issue in *Feltman* is that the trustee was bringing his claim as the representative of specific creditors.[1] Here, SIPC argues that the trustee is bringing the suit on its own behalf as representative of the bankruptcy estate due to the Bank's lack of care and negligence in handling Meridian's bank accounts. Because of this difference, the fact specific holding in *Feltman* that a trustee acting on behalf of a class of creditors has no standing to bring a claim against a third party, does not apply to this case. While it is true that the *Feltman* opinion stated generally the trustee asserted claims against third parties on behalf of creditors of the estate, a closer reading reveals more. Since the plaintiff trustee's complaint in *Feltman* was somewhat vague and unclear on what grounds the plaintiff based his standing,

---

**1.** This argument is premised on and flows from the assumption that this Court has disregarded the *Feltman* sham/illusory holding. Once found not applicable, SIPC's next step was to show how the facts surrounding *Felt-*

*man's* other holding (trustee proceeding on behalf of specific creditors) did not apply because here, SIPC argues the trustee is proceeding on behalf of the estate.

the court addressed standing against third parties (the bank, among others) from three perspectives: (1) trustee on behalf of specific creditors; (2) trustee on behalf of general creditors; and (3) trustee as representative of the debtor corporations (the bankruptcy estate). As noted above, the *Feltman* court found the trustee had no standing to bring suit as representative of the debtor corporation and found no such standing from the other two perspectives.

The Eleventh Circuit, in *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979 (11th Cir.1990), held that a bankruptcy trustee does not have standing to assert claims of customer creditors of the bankrupt against a third party. In *Hutton*, the trustee of a securities dealer who ran a Ponzi scheme brought an action against the brokerage firm for negligence and conversion. The court elaborated on a number of reasons why constitutional and prudential aspects of standing were not met including: finding standing would not redress the injury because the customers could pursue their own causes of action; the dealer and the firm were *in pari delicto*; and, the trustee asserted an injury outside the applicable statutory zone of interest. *Id.* at 985, 986.

In an attempt to maneuver around *Hutton*, SIPC cites to *Arwood v. Dunn, (In re Caribbean)*, 288 B.R. 908 (S.D.Fla.2002), where the trustee, on behalf of the corporate debtor, did have standing. In *Caribbean*, the chairman of K Line, an ocean freight carrier, made two payments totaling almost $ 100,000 to an insider after a major creditor sent a notice of default and demanded a return of all leased equipment and immediate payment of all sums owed. The Chapter 7 trustee brought an adversary proceeding against the chairman alleging breach of fiduciary duty to the third party creditors of the debtor resulting in damage to the debtor's estate and for aiding and abetting such breach. The chairman argued that the trustee lacked standing to assert a claim for a breach of duty to a third party creditor and that such a claim is not property of the debtor's estate. The court concluded that the trustee did have standing to pursue her claims. *Caribbean*, at 918. The court made several distinctions to prevailing case law which permitted this holding. First, the corporation and the general creditor body were both harmed by the illegitimate transfers made by the chairman. *Id.* at 914. Most notably the corporation was harmed because the transfers depleted the corporation's resources which deprived them of the opportunity to pursue any Chapter 11 reorganization. *Id.* Also, the claim could have been asserted by the corporation through its remaining directors or by a shareholder in a derivative action, thus, since the cause of action belonged to the debtor corporation, the trustee had the authority to pursue it. *Id.* at 916. Additionally, the wrongdoing of the chairman was not imputed to the debtor corporation, thus the trustee was free to sue. *Id.* at 917.

The present case is distinguishable from *Caribbean*. First, there are no allegations that Meridian was injured by McEachin's actions. Rather, McEachin's actions worked a benefit to the corporation at the expense of outside creditor customers. Thus, a cause of action never belonged to Meridian, and since there were no other directors or shareholder, a derivative suit was not possible. Second, discussed below, McEachin's wrongdoing is imputed to the debtor corporation which bars the corporation from bringing this type of claim. Finally, the trustee in *Caribbean* brought the claim on behalf of the general creditor body, rather than a specific group of creditors as in this case.

SIPC's third major argument is that this case is distinguishable from *O'Halloran* and *Feltman* because here, SIPC is both Trustee and a statutorily appointed liquidator, while those cases do not reflect that. Accordingly, *Schacht v. Brown*, 711 F.2d 1343 (7th Cir.1983), cert. denied, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983) and *Welt v. Sirmans*, 3 F.Supp.2d 1396 (S.D.Fla.1997) are the most persuasive case law. These cases, using a tort-oriented analysis, essentially stand for the proposition that any money damages SIPC recovers on behalf of the estate will be used to pay the estate's creditors or their assigns and thereby so doing accrue to the estate's benefit by decreasing its liabilities.

First, *Schacht*. SIPC argues that *Feltman's* aforementioned illusory analysis was derived from the doctrine of *in pari delicto* as enunciated in *Cenco Inc. v. Seidman & Seidman*,[2] 686 F.2d 449, (7th Cir. 1982), cert. denied, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982), then subsequently further refined in *Schacht*. To place *Schacht* in context, *Cenco* must be briefly discussed. In *Cenco*, the corporation and its managers/directors committed massive fraud over a five year period. The accounting auditors failed to discover it. Suit was brought by Cenco against the auditors for fraud, negligence in not uncovering the directors' fraud, and securities violations. The auditors sought to use, through imputation, the fraud of the managers as their defense. The court held that an imputation defense can be raised when the corporation's managers are not stealing from the corporation, but rather are committing fraud on behalf of and for the benefit of the corporation. *Cenco*, at 455, 456. In such a scenario, the corporate managers are turning the company into an engine of theft against outsiders. *Id.* at 454. This bars the corporation from suing for fraud where the corporation actually benefitted from the fraud. *Id.* at 455, 456. The *Cenco* court announced a two part results-oriented analysis (designed to satisfy the underlying objectives of tort liability) to aid in determining whether an imputation defense is called for: (1) whether a judgment in favor of a plaintiff corporation would compensate the victims of the wrongdoing; and (2) whether a recovery would have the effect of deterring future wrongdoing. *Id.*

The Seventh Circuit revisited the *Cenco* decision in *Schacht*, where the bankruptcy trustee as the liquidator of the corporation, brought suit. Because of this, SIPC argues, *Schacht* is more on point and thus distinguishable from *Cenco* where there was no liquidator. In *Schacht*, there was a complaint by the State Director of Insurance, as statutory liquidator of the failed insurance company, to recover for damages to the failed insurance corporation against officers, directors, parent corporation, outside accountants, and outside businesses as a result of RICO and other violations. The complaint alleged that the defendants worked a complex scheme to keep the insurance company operating long past the point of insolvency, damaging creditors, policy holders, and the corporation itself. Though the court felt a *Cenco* analysis was not applicable, it did ultimately perform the two-part tort objectives analysis. Regarding the first factor, it was

**2.** First, it should be noted that *Feltman* only cited to *Cenco* in a footnote explaining how *Cenco* could be an additional ground to bar suit besides those relied on in the body of the Opinion. In that the debtor's status as a sham corporation could bar them from suing on other grounds as outlined in *Cenco* where the debtor corporation was an engine of theft, unentitled to recovery. And that *Cenco* simply illustrated one circumstance where an agent's illegal acts are imputed to the corporation and equity will bar the wrongdoer corporation from suing the accessories to the wrongdoing. *Feltman*, at 474, FN9.

determined that any recovery by the liquidator would inure to the corporate estate satisfying, in full, innocent policy holders and creditors before the corporation's shareholders. *Schacht,* at 1348. Whereas in *Cenco,* the corporation was suing and any judgment in favor of the corporation would benefit the company's corrupt directors and stockholders, leading to a perverse compensation plan. *Cenco,* at 455. When *Cenco* considered deterrence, the second objective of tort liability, if the corrupt corporate directors could shift the cost of their wrongdoing to the auditors (outside third parties) for failing to discover the fraud, then shareholders would be less inclined to put policing measures in place and be on the alert for dishonest officers. *Schacht,* at 1349; *Cenco,* at 455, 456. In *Schacht,* since there were not a large number of corporate shareholders, and the directors, as shareholders, would not recover directly, the deterrence concerns of *Cenco* were not present. *Id.* at 1349. Thus, the liquidator in *Schacht* was permitted to bring the suit.[3] *Id.*

Florida law that directly distinguishes *Schacht* arises in *Seidman & Seidman v. Gee,* 625 So.2d 1 (Fla.3d DCA 1992) appeal dismissed for lack of jurisdiction, 653 So.2d 384 (Fla.1995). That court stated that when a corporate officer's fraud was intended to and did benefit the corporation to the detriment of outsiders, the fraud imputed to the corporation is an absolute defense and the corporation is precluded from bringing an action and recovering on a claim against a third party. *Id.* at 3. The wrongdoing actions are imputed to the corporation even if the actions ultimately result in the failure of the business. *Banco Latino Int'l v. Gomez Lopez,* 95 F.Supp.2d

1327, 1336 (S.D.Fla.2000) (*citing Gee,* at 3). *Gee* is Florida's leading case on the imputation doctrine and the Eleventh Circuit has recognized it as establishing the law of Florida to be applied by federal courts sitting in diversity cases. *Banco Latino Int'l,* at 1335, 1336 FN11 (*citing Beck v. Deloitte & Touche,* 144 F.3d 732, 736 (11th Cir.1998)). In *Gee,* a principal who managed and controlled an insurance company fraudulently inflated the worth of his company by $ 10 million dollars in order to secure licenses to solicit customers internationally. The accounting firm that audited the insurance company negligently failed to discover the fraud. The insurance company collapsed and a liquidator was appointed to wind up affairs. The liquidator, on behalf of the corporation, brought a negligence suit against the auditor for failing to discover the fraud (no $10 million certificate of deposit existed) and in doing so artificially prolonged the insurer's life past the point of insolvency, allowing the company to incur $16 million in debt to policy holders and creditors. In finding that the liquidator was estopped from bringing the suit against the third party (who plead the imputation defense), the court noted that the fraud committed by the principal of the bankrupt insurance company was done on behalf of the corporation, designed to benefit the corporation (as opposed to fraud against the corporation with intent to loot it) and turned it into an "engine of theft" against policyholder and investors. *Id.*

The *Gee* court then distinguished *Schacht.* The court in *Gee* pointed out that the *Schacht* court decided that a *Cenco* tort analysis was not even applicable to

---

**3.** It is clear that the *Feltman* court was fully aware of the *Schacht* decision by citing to it when defining a cause of actions for corporations. Nevertheless, the *Feltman* court held that under the circumstances alleged in the

complaint the corporations were not injured by their prolonged life and thus had no standing to bring suit vis-a vi the trustee. *Feltman* at 474.

their case because a *Cenco*-type estoppel analysis was limited to where managers and directors turned the company into an engine of theft against outsiders and not applicable where managers were stealing *from* the corporation, hurting stockholders. *Gee,* at 3 (*citing Schacht,* at 1347, 1349). However, in *Schacht* that was not the case. There, the corporate directors and outside defendants worked together in a far reaching scheme to continue the business past the point of insolvency thereby inflicting real damage on the corporation by looting its assets. *Gee,* at 3 (*citing Schacht* at 1347, 1348). Therefore, the defendants could not use the estoppel defense (that the wrongdoing of the directors be imputed to the corporation) and, thus, the liquidator did have standing to proceed against the defendants because there was an actual injury suffered by the corporation. *Schacht,* at 1349. *Schacht's* two-prong tort analysis is the argument that SIPC advances, but as it was pointed out, the outcome of that analysis is based on underlying facts notably different from this case. As in *Gee,* the fraud committed by McEachin was not against the company and not committed to loot or hurt Meridian, rather the fraud committed by McEachin was intended to benefit him and Meridian at the expense of investors, turning the company into an engine of theft against outsiders who, in this case, were customers of Meridian. Unlike in *Schacht,* there was no "real damage" or injury done to Meridian by McEachin's wrongdoing; which is a prerequisite of standing. Thus, applying *Gee,* SIPC's *Schacht* attack fails.

In final support of its position SIPC relies on *Welt v. Sirmans,* 3 F.Supp.2d 1396 (S.D.Fla.1997)[4], to clarify

*Gee* and resurrect *Schacht.* The *Welt* court applied the two-pronged tort liability analysis of *Cenco* to justify the "larger shoes" theory (that a liquidator not only stands in the shoes of the bankrupt, but also represents interests of creditors, other insureds, and the general public) and found that any recovery by the trustee would serve to properly compensate the victims of the corporation's wrongdoing, and deter other such wrongdoings. *Welt* at 1402. However, if the proposition is advanced that a trustee stands in larger shoes because he represents creditors and shareholders, and a director's fraud should not be imputed to the trustee because if so, these other parties will be denied the benefit of a recovery, we end up violating a basic rule of bankruptcy: that a trustee in bankruptcy cannot assert claims on behalf of the creditors of the estate. *Flagship Healthcare, Inc. v. Greenleaf,* 269 B.R. 721, 727 (Bankr.S.D.Fla.2001)("only causes of action belonging to the debtor at the commencement of the case" are property of the estate that a trustee can pursue) (citing *In re Ozark Restaurant Equip. Co.,* 816 F.2d 1222, 1224, 1225 (8th Cir.1987); (*Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416, 428, 92 S.Ct. 1678, 32 L.Ed.2d 195) (trustee only has authority to bring claims that belong to the estate)). The *Welt* court, in an equity argument, allowed the trustee to assert the claims of creditors that did not belong to the estate, a position not supported by prevailing case law. SIPC's reliance on this two-pronged tort liability analysis as discussed in *Schacht* and *Welt* is not sufficient justification to permit SIPC, in the capacity of trustee or liquidator, to have standing to assert Meridian's claims against the Bank.

4. SIPC's pleading is framed in such a way as to lead one to believe that Judge Nesbitt, the presiding judge in *Welt,* has overruled or at the very least distinguished his earlier holdings in Feltman. However, *Welt* never mentions nor cites to, nor draws any comparisons to the *Feltman* case.

More on point regarding the SIPC's standing as representative of the Meridian is the *Wagoner* rule as outlined in *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir.1991) later followed in *A.R. Baron & Co., Inc. v. D.H. Blair & Co.*, 280 B.R. 794 (Bankr.S.D.N.Y.2002)(finding an SIPC trustee had no standing to bring claims on behalf of the estate against third parties who allegedly participated with the debtor estate's management in stock scam schemes; defendants successfully argued the Wagoner rule); *see also Securities Investor Protection Corp. v. BDO Seidman, LLP*, 49 F.Supp.2d 644 (S.D.N.Y.1999). In brief, the *Wagoner* rule states that when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against that third party for the damage to the creditors because the claim belongs to the creditors. In *Wagoner*, the sole shareholder and owner of a financial management company sold worthless notes to fellow church members/investors, made bad trades, and upon losing the money in three brokerage accounts opened with the broker Shearson, filed for bankruptcy. The trustee brought suit against the broker (who allowed the bankrupt to trade at its office) for aiding and abetting, undue influence, and breach of fiduciary duty by participating in conduct intended to strip the management company of its assets. The broker argued that the trustee had no standing because the claims he was bringing on behalf of the estate were really those of the defrauded customers and that any action the debtor estate might bring regarding the broker's alleged participating in looting is barred because the company's sole shareholder and owner was the principal that did the wrongdoing. The *Wagoner* court noted that it is "well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Wagoner*, at 118 (citing *Caplin*, 406 U.S. at 434, 92 S.Ct. at 1688). Similarly, when a bankrupt corporation has joined forces with a third party to defraud its creditors, a trustee cannot recover against the third party for damages against the creditors because these claims belong to the creditors of the estate and not the trustee. *Wagoner*, at 118. Moreover, if a bankruptcy trustee has no right to assert a claim because it belongs to a third party and not the bankruptcy estate, then the trustee fails to meet the prudential burden limitation of standing in that the legal rights asserted must be his own. *Id.* Additionally, for a trustee to have standing to pursue a claim against a third party there must be allegations that the third party injured the bankrupt debtor in some manner that is distinct from the injuries suffered by the debtor estate's creditors. *A.R. Baron*, 280 B.R. at 800. Here, SIPC's complaint has made no allegations that the Bank has injured Meridian in such a way as to be distinct from specific customers; SIPC seeks money damages of $2,300,000 in each Count in its Complaint based on funds embezzled from specific customers. To the extent any claim by the trustee alleged money damages to the injured customer creditors, the trustee would lack standing to assert such a claim. *Id.* at 801. Likewise, while SIPC contends it is bringing claims on behalf of the bankruptcy estate, the facts demonstrate that all of the claims relate solely to the funds taken by Meridian and McEachin from specific customers. SIPC is asserting causes of action that clearly run in favor of the defrauded customers and allege no causes of action that are unique to the estate of Meridian.

As in *Wagoner*, Meridian was managed by a sole owner who committed the wrong-

ful acts. There were no innocent decision makers who could have prevented the embezzlement. Thus, the holding in *Wagoner* applies and McEachin's wrongs will be imputed to the Meridian estate thereby precluding SIPC's claims against the Bank on behalf of Meridian. Additionally, as there was no allegation that Meridian was injured by the Bank in some way that is distinct from the injuries suffered by Meridian's customers for which Meridian would be able to redress, SIPC would also lack standing to assert claims against the bank.

■ Therefore, I hold that the Plaintiff SIPC, as Trustee and representative of Meridian, has not plead the constitutional and prudential requirements of standing: and thus, SIPC lacks standing to assert the claims set forth in their Complaint against the Bank in that capacity.

■ The Bank has not challenged SIPC's standing in any of its other capacities. Case law does support the standing on SIPC proceeding as bailee of customer property. SIPC does have standing to bring claims as bailee of customer property but only to the extent that the Meridian's customers have not been paid. *A.R. Baron* at 805; *Redington v. Touche Ross & Co.*, 592 F.2d 617, 626 (2d Cir.1978), rev'd on other grounds, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Three such customers are affected: Woodruff, Wilcox, and the Police Benevolent Association (PBA).

Although SIPC lacks standing to sue in its capacity as trustee and representative of the Meridian estate, it does have standing to sue in its other capacities. Accordingly, I must address the issue of whether or not the First Amended Complaint states any claim upon which relief can be granted.

The substantive Counts allege in pertinent part for this analysis:

Count One, Negligence/Gross Negligence asserts: "As custodian of the Meridian customer retirement/pension and investment funds, Capital City owed a duty to those customers to use reasonable care to safeguard the assets entrusted to it." Further, that Capital City recklessly and negligently breached this duty of reasonable care, ordinary care, and good faith by allowing funds entrusted to its care to be illegally disbursed to others.

Count Two, Recoupment states: "Capital City knew that Meridian and McEachin were fiduciaries and maintained fiduciary account with Capital City." Further, that Capital City had notice of Meridian's breaches of their fiduciary duty to Meridian's customers because deposits of funds of one represented person were deposited into the account of other represented person or to the Meridian accounts or to the account of Capital City.

Count Three, Breach of Fiduciary Duty Owed to Meridian Customers states: "As custodian of the Meridian customer accounts, Capital City owed fiduciary duties to each Meridian customer to safeguard the assets in their retirement, pension, and investment accounts." Further, Capital City breached this duty by failing to investigate numerous suspicious transactions occurring in the Meridian bank accounts.

Count Four, Aiding and Abetting Breach of Fiduciary Duty states: Meridian and McEachin owed fiduciary duties to its customers and breached those duties by causing, directing, and diverting transfers of customer property. Further, that "Capital City knowingly or recklessly gave substantial assistance to McEachin in his breach of such fiduciary duties."

Count Five, Conversion states: Capital City accepted for deposit checks and cash-

ier checks made payable to specific payees which were improperly endorsed or unendorsed and then deposited them, not in an account of the named payees, but into various accounts maintained by Capital City for Meridian and its investors. The Bank knew or should have known that various transfers referenced therein constituted the conversion of Meridian's customers property.[5]

Count Six, Breach of Covenants of Good Faith and Failure to Exercise Ordinary Care states: Capital City had the duty to act with ordinary care and in good faith while handling, processing, paying, or transferring Meridian's customer's instruments at the direction of Meridian, or for the benefit of Meridian or Capital City. That Capital City failed to exercise ordinary care and good faith in handling deposits and instruments related to Meridian's fiduciary accounts in that Capital City knew of Meridian's fiduciary status and that Capital City had notice of Meridian's breach of fiduciary duties with its customers yet took no action, thereby breaching their duties.

Count Seven, Breach of Warranty states: pursuant to Fla. Stat. § 674.205, by accepting the deposits by McEachin and Meridian for collection, the Bank warranted to the payor Plaintiffs that the amount of the deposited items were paid to the proper accounts. The Bank breached this warranty by allowing the deposit of payor Plaintiff's items in Meridian and other accounts to which the items were not properly payable.

 In Florida, for a plaintiff to succeed on a negligence claim, he must "show that the defendant owed a duty of care to the plaintiff, that the defendant breached the duty, that the breach caused the plaintiff's injury, and that damages are owed." *Miles v. Naval Aviation Museum Found., Inc.*, 289 F.3d 715, 722 (11th Cir. 2002) (*citing Ewing v. Sellinger*, 758 So.2d 1196, 1197 (Fla. 4th DCA 2000)). These required elements also apply to the general common law of torts as well. *Eckert v. U.S.*, 232 F.Supp.2d 1312, 1320 (S.D.Fla. 2002). The first step in a negligence analysis is to identify the standard of care with regards to a duty and then determine to whom that duty is owed. The general rule is that a bank has a duty to use ordinary care, presumptively in all its dealings. Fla. Stat. 674.103. If it is found there is no duty owed by the Bank to the Meridian investors, a negligence claim cannot be maintained and all corresponding Counts in the Plaintiff's Complaint, in so much as they rely on a duty being established to the investors, will fail.

In the Bank's Motion to Dismiss Plaintiffs' First Amended Complaint, the Bank argues that none of the Plaintiffs' seven Counts state a claim upon which relief can be granted because Plaintiffs: (1) failed to sufficiently allege that Capital City Bank owed a legal duty to any of the Plaintiffs; (2) failed to sufficiently allege that the Bank's conduct was the proximate cause of the Plaintiff's losses; (3) failed to sufficiently allege that the Bank had actual knowledge of Meridian and McEachin's breach of fiduciary duty, and gave substantial assistance to the wrongdoers; (4) failed to allege that the Bank had notice of the breach of fiduciary duty pursuant to Fla. Stat. § 673.3071; (5) failed to sufficiently allege the Plaintiffs had a right to possess property and demanded that Bank return the property; and (6) failed to al-

---

**5.** See Amended Complaint ¶¶ 40—49 for a complete list of Capital City's actions and transfers as outlined by the Plaintiff.

lege that the Bank breached any warranty to Plaintiffs.

I will first address the above arguments collectively as they relate to duty. The Bank, citing *O'Halloran*, 205 F.Supp.2d. 1296, argues that there was no duty owed to Meridian investors because they were not the Bank's customers. In *O'Halloran*, one of the bank's defenses was failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) in that the investors did not establish a fiduciary relationship with the bank and therefore, the bank owed no legal duty to the defrauded investors. The court held there was no relationship whatsoever, fiduciary, confidential, or otherwise, between the investors and the bank. *Id.* at 1301. Rather, the church was the party who established a fiduciary relationship with the bank because the church held the depository accounts there. Further, the bank owed a duty to the church to protect the information it knew about the church and was not to disclose this information to the investors. Thus, the bank had no duty to disclose any material facts to the investors, even if it had knowledge of such facts. Therefore, the *O'Halloran* court held that since the existence of a legal duty was essential to all the claims and there was no duty owed, the plaintiff's complaints were dismissed. *Id.* at 1302.

The Plaintiff's Response to the Bank's Motion to Dismiss seeks to distinguish the case at bar from *O'Halloran* arguing that in that case none of the victims of the fraud were known to the bank and the church's bank accounts were clearly not fiduciary in nature. Here, the Plaintiff alleges both the instruments deposited and the accounts from which funds were deposited and disbursed were clearly fiduciary in nature. This is so because of the specific language and phrasing of the accounts. Because most of the five accounts had the language "trust," or "fbo," or "retirement account," the Bank was put on notice that the accounts and instruments were fiduciary accounts. As a result, SIPC asserts that the Bank became a custodian of the funds in those five accounts and thus owed duties to Meridian's customers to: (1) use reasonable care to safeguard the assets the investors entrusted to it; (2) monitor the accounts so that the funds would not be disbursed or diverted illegally to others; (3) investigate suspicious transactions of Meridian and McEachin; and (4) take some action since the Bank knew of Meridian and McEachin's fiduciary status and their breach of their fiduciary duties to their customers.

The two cases cited to support the Plaintiff's "language" theory are *Centrust Sav. Bank v. Barnett Banks Trust Co.*, 483 So.2d 867, 869 (Fla. 5th DCA 1986) and *Emile v. Bright*, 203 So.2d 328, 329 (Fla. 4th DCA 1967). Both cases stand for the proposition that a bank cannot apply funds on deposit in a trust account to offset the trustee-depositor's personal debt with that bank. The bank that effected the offset in *Centrust* argued that the account name contained no notice that it was a trust account representing guardianship funds. The court held that the use of "as trustee for * * beneficiary" in the account name, along with an appended trust agreement was more than sufficient to charge the bank with knowledge that triggers a bank's duty to inquire into the legality of the transaction. *Id.* 870. Likewise, in *Emile*, the word "trustee" following the name of a savings account depositor: (1) imported the existence of a trust; and (2) the depositor was one presumptively acting in a fiduciary capacity, thus, alerting the bank so that it may not retain the funds held in the trust to offset the debt of the depositor. *Emile*, at 329, 330.

In this case, there have been no allegations by the Plaintiff that Meridian was

either paying its obligations to the bank or that Meridian pledged these accounts to the Bank for its debts to the Bank. Further, it should also be pointed out that the phrase "as trustee for * * * beneficiary" or "trustee" is not found in any of the five accounts, nor were there words such as "guardian" or "executor" or " * * escrow account," nor were there any allegations that trust agreements were submitted to the Bank.[6] While it is true the word "trust" was used (as well as "fbo" and "retirement account"), none of the bank accounts contained the key phrases mentioned above which would identify and describe the capacity of the depositor, and, according to the case law cited by the Plaintiff, is the trigger word necessary that prompts an inquiry by the bank in a set-off situation. Since there was no trustee-depositor set-off contemplated by the Bank in this case and no special trigger words in the name of the bank account to inspire an inquiry, the Bank had no notice that any of the accounts were of a fiduciary nature and as a result, the Bank owed no duty to oversee these funds.[7]

■ Approached from a different perspective, the Supreme Court of Florida has held that deposits made by those serving as fiduciaries such as trustees, executors, administrators, and agents are characterized as general deposits, *Martin v. Meyerheim*, 101 Fla. 82, 83, 89, 133 So. 636, 639 (Fla.1931), and general deposits are merely arms-length transactions in which the bank owes no fiduciary responsibilities.

*First Nat'l Bank and Trust Co. of the Treasurer Coast v. Pack*, 789 So.2d 411, 414 (Fla. 4th DCA 2001); *Maxwell v. First United Bank*, 782 So.2d 931, 934 (Fla. 4th DCA 2001)(bank-depositor relationships are arms-length transactions and there is no duty by the customer or the bank to act for the benefit or protection of the other party, nor to disclose facts that the other party could have discovered through reasonable diligence) (*citing Watkins v. NCNB Nat'l Bank of Fla.*, 622 So.2d 1063, 1065 (Fla. 3d DCA 1993)). Moreover, a subsequent Florida Supreme Court case (a companion to *Emile*) soundly reconciled the issue of whether a specially styled bank account imparted a duty of inquiry and monitoring by a bank. The Court wrote:

> . . . a great many trust accounts are handled by the banking institutions of this state every year, and that to impose upon them a duty to look behind the words 'trustee' or 'trust account' in each transaction withdrawing or pleading the funds of such accounts will unduly burden and hamper the operations of the banks . . . . this court will not hold that the mere withdrawal of funds from a trust account ordinarily requires the bank, in its capacity as paying or collecting agent, to question the authority of the depositor-Trustee to do so. The custom and usage in the banking trade in this respect is so well established, and the burden that any other rule would cast upon the banking institutions is so

---

**6.** Although it was alleged that the "fbo" account submitted a corporate resolution.

**7.** It should also be so noted that even when the special trigger words were found in the account names indicating that the depositor was a fiduciary of a third party beneficiary, the bank never became a "custodian" of those funds. Rather, the bank was under a duty merely to inquire whether the funds were the property of a third party and if so, the bank

could not accept that property in payment, or for security of, the trustee's debt to the detriment of the equitable owner of the trust res. Those fact specific cases do not hold that there is an ongoing and continued duty for the bank to monitor those funds, only to inquire before off-setting against the depositor-trustee's debts or otherwise be liable for participating in the trustee's breach of trust.

great, that it might be said that this practice Prima facie constitutes the exercise of ordinary care. The situation with which we are here concerned, however, is not a routine payment or collection of an item by a bank, acting as agent of the depositor; *here, the bank assumed the role of creditor and the depositor-Trustee became the debtor.*

*Home Fed. Sav. and Loan Ass'n of Hollywood v. Emile,* 216 So.2d 443, 446 (Fla.1968)(*emphasis supplied*).

When applying this collection of case law and the Supreme Court's mandate in *Home Fed. Sav. v. Emile,* to the case before me, I hold that Capital City Bank was under no requirement to analyze, investigate, or look behind Meridian's banking transactions in a custodial capacity for the benefit of Meridian's investors. Thus, the Bank owed no duty to Meridian's investors in any of the five investor accounts, unless, of course, there was some other basis for finding that a fiduciary relationship existed between the Bank and Meridian's investment customers.

■■■■■ A fiduciary relationship can either be express or implied. *Maxwell,* at 933; *First Nat'l,* at 414. An express fiduciary relationship is created by a contract between the two parties, as in principal/agent, or through a legal proceeding in the case of a guardian/ward. *Id.(First Nat'l,* at Id.). When a fiduciary relationship is implied in law, it is based on the specific facts and circumstances surrounding the transaction and the relationship of the parties. *Maxwell,* at 933. This can arise when "confidence is reposed by one party and a trust accepted by the other." *Id. (from Capital Bank v. MVB Inc.,* 644 So.2d 515, 518 (Fla. 3d DCA 1994)) (*quoting Dale v. Jennings,* 90 Fla. 234, 107 So. 175 (1925)). Specifically, under Florida law, to establish a fiduciary or confidential relationship between the parties, there

must be a showing of substantial evidence indicating dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party. *Lanz v. Resolution Trust Corp.,* 764 F.Supp. 176, 179 (S.D.Fla.1991) see *O'Halloran,* at 1301. Moreover, evidence that one party placed trust or confidence in the other party does not create a fiduciary relationship in the absence of "some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Lanz,* at 179 (*citing Harris v. Zeuch,* 103 Fla. 183, 137 So. 135 (1931)); *Barnett Bank v. Hooper,* 498 So.2d 923 (Fla.1986).

In this case there have been no allegations that the Bank accepted or agreed to oversee disbursement of funds in the Meridian accounts, nor to be trustee, nor to undertake any special duties; the Bank was simply the depository institution. Further, since the Bank did not set up the trust by special arrangement for a designated purpose, it is inconceivable for a bank to be expected to know how the trust (if it is indeed a trust) is being administered, what actions do not constitute a designated purpose, and when, or if, funds are being misapplied. Likewise, there have been no allegations that Meridian submitted its own trust documents to the Bank setting guidelines on who was, and who was not, properly authorized to write checks, endorse instruments, or secure debt. Similarly, there have been no allegations the Bank consciously chose to advise, counsel, or protect Meridian or their investors that would create justifiable reliance on their behalf. Neither were there allegations that the Bank induced or encouraged the investors to act. Finally, the Bank did not involve itself with the transactions between the investors and Meridian, nor did the Bank benefit from those transactions at the expense of the inves-

tors. In sum, no allegations have been made to indicate that the Bank had any express or implied fiduciary relationship with Meridian's investors or Meridian per se. Accordingly, the Bank had no confidential or fiduciary relationship with the investors; therefore, the investors would not be justified in a belief that the Bank owed a duty of reasonable care to them based on a fiduciary relationship.

 The Court now turns to the Plaintiff's Aiding and Abetting Breach of Fiduciary Duty claim. There are four elements for a claim of aiding and abetting a breach of fiduciary duty: "(1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *In re Caribbean K Line,* 288 B.R. 908, 919 see also *Aberbach v. Wekiva Assoc., Ltd.,* 735 F.Supp. 1032, 1036, 1037 (S.D.Fla.1990). Elements one and two are uncontested; Meridian had a fiduciary duty to its investors and it did breach this duty. The analysis required here is whether the Bank had notice or actual knowledge of Meridian's breach. The Plaintiff advances that the Bank did have such knowledge because: (1) the names on the accounts and instruments were indicia of the fiduciary nature and accounts that put the Bank on notice of a fiduciary relationship; (2) pursuant to Fla. Stat. § 673.3071(2)(b)2,3 and (d)3, Notice of Breach of Fiduciary Duty, the Bank was put on notice of Meridian's breaches when the Bank accepted funds to its own account that were drawn on fiduciary accounts and checks were issued to McEachin personally and made payable to cash from the fiduciary accounts. The Plaintiff argued that these together give the Bank fair notice of the claim and therefore the

Bank's Motion to Dismiss should be denied on this point.

Florida Statute § 673.3071(2) Notice of Breach of Fiduciary Duty states:

(2) If an instrument is taken from a fiduciary for payment or collection or for value, the taker has knowledge of the fiduciary status of the fiduciary, and the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:

(b) In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is:

2. Taken in a transaction know by the taker to be for the personal benefit of the fiduciary; or

3. Deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.

(c) If an instrument is issued by the represented person or the fiduciary, as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty.

(d) If an instrument is issued by the represented person or the fiduciary, and made as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is:

2. Taken in a transaction known by the taker to be for the personal benefit of the fiduciary; or

3. Deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.

■ The fatal flaw in this Count is that the Bank did not have knowledge of the fiduciary status of Meridian to its customers at the time the Bank handled the instruments; therefore, it follows that the Bank did not have knowledge of the breach by Meridian. As discussed in detail above, the stylized name of the accounts in this case was not sufficient to indicate that the accounts were fiduciary and that Meridian had fiduciary duties to its investors. Additionally, in the absence of a special deposit agreement with the Bank indicating some specified purpose, an account is labeled "general," *Grillo v. City Nat'l Bank of Miami*, 354 So.2d 959, 960 (Fla. 3d DCA 1978), and is an arms-length transaction imparting no duty on behalf of the Bank to monitor and investigate. *Maxwell* at 934. Further, "[I]f a trustee deposits trust funds in his name as such, the deposit is general and a debtor-creditor relationship is created." *Kaufman v. First Nat'l Bank of Opp, Alabama*, 493 F.2d 1070, 1072 (5th Cir.1974). In such a trust account a bank is not bound to supervise the use or the application which a fiduciary depositor makes of trust funds, and is not liable for any misapplication merely because the funds are identified as trust fund monies. *Id.* Considering these cases, Fla. Stat. § 673.3071(2)(c), and previously mentioned precedent, I hold that Capital City Bank was not aware of, and had no notice of the fiduciary status of Meridian's accounts. The Bank was merely a depository and clearing agency for checks. Meridian was the Bank's customer, not the investors, and as such the Bank owed Meridian a duty of confidentiality. As the *O'Halloran* court stated, since the church was the bank's customer and not the swindled investors, the bank owed a duty to the church to protect the information it may have known about the church and owed no duty to the investors in any capacity and no duty to disclose any mate-

rial facts, that it may have known about its customer, to the investors. *O'Halloran*, at 1301, 1302. Likewise, no legal duty existed between Capital City Bank and Meridian's investors. Further, the Plaintiff failed to sufficiently plead that the Bank had notice of Meridian's fiduciary tie with its investors and possessed no knowledge of Meridian's improper activity. Under these case facts, the Bank was under no obligation to monitor or investigate the day to day banking activities surrounding Meridian's five accounts, nor to disclose to Meridian's investors. Because the essential elements of duty and notice/knowledge were missing, Count Four (Aiding and Abetting) fails as a matter of law, as do Counts One (Negligence), Two (Recoupment), Three (Breach of Fiduciary Duty), and Six (Breach of Covenants of Good Faith and Failure to Exercise Ordinary Care). Accordingly, the Plaintiff failed to state a cause of action for which relief can be granted in Counts One, Two, Three, Four, and Six of their Amended Complaint.

■ Next, I will discuss Count five, Conversion. Under Florida law, a conversion is "an unauthorized act which deprives another of his property permanently or for an indefinite time." *Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1291 (11th Cir.2001) (*citing Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So.2d 1157, 1160–61 (Fla. 3d DCA 1984) from *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 33 So.2d 858 (1948)). More specifically, property is converted when a party wrongfully takes dominion and control over another's property for his own use. *Belford Trucking Co., v. Zagar*, 243 So.2d 646, 648 (Fla. 4th DCA 1970). Additionally, in Florida, one bringing an action for conversion must show that either a demand was made, or, if not made, plead that such a demand would have been

futile. *Ginsberg v. Lennar Florida Holdings,* 645 So.2d 490, 500 (Fla. 3d DCA 1994). "Demand is an essential element in any claim for conversion and failure to make such a demand or allege the futility of doing so is fatal." *Id.* at 500.

The allegations of wrongs by the Bank under SIPC's conversion claim fall into two general categories: (1) Meridian and/or McEachin wrote checks from investor's accounts, the Bank accepted these checks and deposited these checks into inappropriate accounts; and (2) the Bank accepted deposits made payable to specific payees, these deposits were improperly endorsed or unendorsed, then deposited in accounts other than that of the named payee. In this case, the facts alleged do not demonstrate that the Bank took dominion over Meridian's funds for its *own* use which is a threshold inquiry of case law and as set forth in Form 1.939, of the Florida Rules of Civil Procedure for conversion. Additionally, SIPC has made no allegations that a demand was made by any Meridian customer (or SIPC) to the Bank, nor was it shown that a demand would be futile. Moreover, it has already been established that Meridian was the Bank's customer, and not Meridian's customer investors. Unless there is a special instruction or restriction on an account, a banking customer has a right to do as he wishes with the funds in his account. Case law imputes no duty on banks to monitor or micro-manage a customer's actions or his money unless there is a previous agreement or the Bank has notice of actual fraud. Here, these conditions are not present and the Bank cannot be held liable in conversion for what Meridian did with the funds in its own accounts. For the above stated reasons, SIPC's allegations are not sufficient for me to infer and reasonably conclude that conversion had occurred. Thus, Count five fails.

Last, Count seven, Breach of Warranty is addressed. At the hearing, counsel for the Bank argued that SIPC waived Count seven because SIPC, in its Response to the Bank's Motion to Dismiss, did not address nor respond to the Bank's arguments for dismissing that Count. Upon inspection, the language used in the Response's introduction indicates that SIPC is bringing six Counts instead of the previous seven. "SIPC brought its six count complaint against CCB in two capacities." (Docket # 20, Response, pg. 1). Further, in the "argument" section of the Response there is no discussion of Florida Statute § 674.205 or breach of warranty. Based on this and the arguments made in paragraph "F" of the Bank's Motion to Dismiss (Count Seven Fails to State Cause of Action for Breach of Warranty By Bank), I find that SIPC's Breach of Warranty Claim is without merit and will be dismissed.

## CONCLUSION

The plaintiff, SIPC in its various capacities, brought this action against the Bank for negligence and gross negligence, recoupment of proceeds of fiduciary items, breach of fiduciary duty to Meridian customers, aiding and abetting the breach of fiduciary duties, conversion, breaches of covenants of good faith and failure to exercise ordinary care, and breach of warranty. Subsequently, the Bank filed a Motion to Dismiss arguing that SIPC lacked standing, failed to assert a claim upon which relief may be granted, failed to join indispensable parties, and is barred by the economic loss rule.

The Bank's Motion to Dismiss will be granted. Meridian's bank accounts were a facade of legitimacy and were solely used to defraud customers. The fraud was for the benefit of McEachin and Meridian at the expense of Meridian's customers. As

a result, Meridian suffered no injury, and alternatively, any such injury is illusory. Therefore, SIPC, as Trustee and representative of Meridian, lacks standing.

Although SIPC, in its remaining capacities, has the requisite standing, the Bank's Motion to Dismiss will be granted because SIPC failed to assert a claim upon which relief may be granted. The existence of a legal duty is an essential element to nearly all of SIPC's claims. However, the Bank owed no duty to Meridian's investors because they were not the Bank's customers. Furthermore, the Bank was without notice or knowledge that any of Meridian's accounts were of a fiduciary nature because they were characterized as general deposits. As a result, the Bank was simply a depository that owed no fiduciary responsibilities to Meridian's customers. Additionally, since there were no express or implied fiduciary duties between the Bank and Meridian or Meridian's customers, the Bank owed no duty to oversee Meridian's funds. Finally, for the reasons set forth in the discussion section above, Meridian's conversion and breach of warranty claim are dismissed.

Accordingly, it is:

ORDERED AND ADJUDGED that:

1. The Defendant's Motion to Dismiss is GRANTED.